[No. D004276. Fourth Dist., Div. One. Nov. 25, 1987.]

MAGGIO, INC., Plaintiff and Respondent, v.
JAMES E. NEAL, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of section III.

COUNSEL

Joseph Angelo, Victoria Corrado and Woolsey, Angelo & Thatcher for Defendant and Appellant.

Eugene L. Freeland, Philip D. Oberhansley, Charles L. Deem and Gray, Cary, Ames & Frye for Plaintiff and Respondent.

OPINION

WIENER, Acting P. J.—Plaintiff Maggio, Inc. sued defendant James E. Neal, its former vice president for marketing, to recover $69,000 loaned to Neal during his employment. Neal denied liability claiming the money constituted nonreimbursable advances against bonuses. Following a reference under Code of Civil Procedure section 638,[2] a retired superior court judge sitting as a referee rejected Neal's argument and decided in favor of Maggio for the entire amount. The referee also determined that since the loans constituted an open book account and an account stated they were not barred by the two-year limitations period of section 339. The court adopted the referee's findings and recommendations and entered judgment in favor of Maggio for $69,000 plus interest. Neal appeals from the judgment.

We conclude there is substantial evidence to support the finding that the sums advanced were loans which Neal was obligated to repay. We decide, however, that the court erred in accepting the referee's conclusion the advances constituted an open book account and an account stated subject to the four-year limitations period of section 337. Applying the two-year statute of limitations requires a $24,000 reduction of the judgment. As so modified we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Neal began working as a salesman for Maggio in September 1978, about two years after the corporation was formed. Maggio's business, headquartered in Holtville, California, was growing and selling vegetables. Carl Maggio, the president of the company, supervised the business in California. His brother, Anthony, ran a branch operation in Chandler, Arizona. Neal worked in Arizona.

Neal was successful. He received salary advances and became vice president of marketing.

---

[2] Unless otherwise specified all statutory references are to the Code of Civil Procedure.

On October 15, 1983, Maggio's Arizona operation became a separate business known as A.J.M. Farms, Inc. with Anthony as president. Neal severed his connection with Maggio to remain working in Arizona for A.J.M. Farms, Inc. doing essentially the same work as he had for Maggio. Carl remained president of Maggio. Maggio retained all outstanding accounts receivable.

In August 1983 Carl Maggio learned Neal planned to work for A.J.M. Farms, Inc. He telephoned Neal in September to request repayment of advances which had been made to Neal during the preceding four years. Neal said they could work something out and he would get back to him. About two months later Carl again telephoned Neal and requested repayment. Neal said "Yeah, I'll get back to you on it. We'll work it out." According to Carl, Neal did not deny owing the advances or say he would not repay them. Neal testified he could not recall Carl's telephone calls.

Carl Maggio wrote to Neal on April 9, 1984, explaining that the advances totalled $69,000 and payment was due. Receiving no response Maggio's counsel wrote another letter on June 1, 1984, requesting payment. Neal did not respond to either letter on the advice of his counsel.

The $69,000 contained in Carl's demand letter consisted of five advances: $4,000 on December 6, 1979; $20,000 on March 5, 1982; $5,000 on August 30, 1982; $15,000 on May 6, 1983; and $25,000 on June 17, 1983.

The first two advances were by checks authorized and signed by Anthony Maggio. Neal thought these checks were payments against future bonuses. Anthony testified he did not intend that Neal repay these advances.

Carl Maggio authorized and signed the last three checks. Neal had asked for these advances. The $5,000 advance was used to purchase a Rolex watch; the remaining two advances were used in the purchase of a house.

The remittance stub for these last three checks bore the designation "advance." Each check was posted on Maggio's advance account number 10108 and charged to Neal's code number 0823.

Under Maggio's policy employee advances were loans due and payable when the employee left the company. Carl Maggio testified Maggio never gave advances on bonuses because bonuses were not guaranteed. Furthermore, employees received bonuses only in profitable years. When Neal received the $25,000 in advances in 1982 Maggio lost in excess of $700,000. In 1983 the company lost over $7 million. Before the spinoff Carl and

Anthony discussed bonuses to be paid. Testimony conflicts on whether they conferred on bonuses for Neal.

This action seeking recovery of the $69,000 on various common counts was filed in July 1984.

### DISCUSSION

### I

 Neal challenges the sufficiency of evidence to support the finding that the advances were loans, not bonuses. In making this challenge he highlights comments made by the referee during trial concerning inferences to be drawn from Neal's refusal to produce or be questioned about his Arizona state and federal income tax returns. Neal says the referee erred in drawing an adverse inference from his exercise of the privilege not to produce tax returns. (Evid. Code, § 913, subd. (a).)

 When a judgment is challenged on grounds of sufficiency of the evidence, the court's sole task on appeal is to "determine 'whether the evidence, viewed in the light most favorable to [the prevailing party], sustains [the] findings.'" (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 697 [139 Cal.Rptr. 700, 566 P.2d 602], citing *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 309 [196 P.2d 20].) "[I]n examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account . . . all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is . . . to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157].)

 At trial Neal acknowledged he understood bonuses constituted income on which income tax must be paid. He testified he had filed federal and Arizona state tax returns for the years in question but refused to produce those documents again claiming privilege. During examination Neal's counsel objected to questions on what was reported in those tax returns. In ruling on the objection the referee stated: "I'll sustain your objection, but you know the record shows that he has the ability to show that he did pay taxable taxes on this. And if he pays taxes on it, then it's income. And it's up to him. It just leaves him hanging out to dry on that issue, and I would make a finding, of course, that he has the burden of proof to show this was in the matter of a salary payment and not a loan."

Before final argument the referee indicated his position on the nature of the advances. "If [the payments] were bonuses, they would be taxable to the

defendant for income tax purposes. This evidence, if introduced by the defendant, would be persuasive of what he contends. The failure to respond to a request for income tax information would lead one to conclude that the defendant did not regard these advances as bonuses or income receipts."

After our review of the entire record we believe highlighting the referee's comments mischaracterizes the referee's consideration of the evidence. At the end of closing argument and final points by defense counsel on the tax return privilege, the referee stated: ". . . as to the income tax . . . *whether it's a presumption or not, I don't think we need the presumption,* but the fact is he could have brought it in." (Italics supplied.) The referee said he viewed the case as "a sour-grape deal" and did not believe Anthony Maggio's testimony. He noted that giving Neal the benefit of the doubt that the advances were to be paid out of bonuses, there was no evidence bonuses were ever declared.

Even if we were to assume the referee erred in drawing an adverse inference from Neal's failure to supply the tax returns, his error was harmless in light of the substantial evidence to support his findings on the last three advances. In light of this conclusion it becomes unnecessary for us to determine whether the Arizona tax returns were privileged in a California court, and if so, whether the referee could draw an adverse inference from the exercise of that privilege.

## II

Neal next argues the evidence is insufficient to support a conclusion that the advances constituted an open book account or that the letters sent to Neal constituted an account stated. If neither conclusion can be sustained, Maggio was limited to recovery under an oral contract theory to which the two-year statute of limitations applies. (§ 339.) In this event the statute of limitations bars Maggio's action on the advances made on December 6, 1979, and March 25, 1982. If either common count is supported by the evidence, the applicable statute of limitations is four years (§ 337) and Maggio is entitled to recover the full amount of its loan.

The rationale underlying extending the limitations period beyond the two years accorded oral contracts is grounded on judicial acceptance of the enhanced reliability of record keeping in the context of a debtor-creditor relationship where the parties are aware of that relationship and there is, in fact, an account between them. Conversely, there is no reason to extend the limitations period where the creditor acts in a self-serving manner by creating what is in effect a private record of an account without informing the debtor. There is also no reason to permit a creditor to bootstrap this private

account into an account stated by merely mailing a summary of accounts allegedly due to the debtor and treating the debtor's silence as acceptance.

## A.

■ Neal argues there are two fatal deficiencies in the evidence supporting the finding of a book account. First, the evidence fails to show the physical records kept by respondent constitute an open book account as defined in section 337a.[3] Second, the parties did not treat the sums due as a book account.

■ In deciding whether a book account exists the court must examine the agreement, or lack of agreement, between the parties and their conduct in the context of their commercial dealing. The mere incidental keeping of accounts does not alone create a book account. (*H. Russell Taylor's Fire Prevention Services, Inc.* v. *Coca Cola Bottling Corp.* (1979) 99 Cal.App.3d 711, 728 [160 Cal.Rptr. 411].)

■■ Here there is no evidence of an agreement between the parties that the loans to Neal would be carried as a book account. Nor does the conduct of the parties show that they intended or expected such an account would be created. Accordingly, there is insufficient evidence to support the finding of an open book account.

## B.

■ Neal also asserts there was insufficient evidence to support the finding that an account stated existed between the parties because Neal never agreed that he owed $69,000 to Maggio.

■ An account stated is an agreement, based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing. (*Gleason* v. *Klamer* (1980) 103 Cal.App.3d 782, 786 [163 Cal.Rptr. 483].) To be an account stated, "it must appear that at the time of the statement an indebtedness from one party to the other existed, that a balance was then struck and agreed to be the correct sum owing from the debtor to the creditor, and that the debtor expressly or impliedly promised to pay to the creditor the amount thus determined to be

[3] Section 337a provides: "The term 'book account' means a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner."

owing." (*H. Russell Taylor's Fire Prevention Service, Inc.* v. *Coca Cola Bottling Corp., supra,* 99 Cal.App.3d at p. 726.) The agreement necessary to establish an account stated need not be express and is frequently implied from the circumstances. When a statement is rendered to a debtor and no reply is made in a reasonable time, the law implies an agreement that the account is correct as rendered. (*Zinn* v. *Fred R. Bright Co.* (1969) 271 Cal.App.2d 597, 600 [76 Cal.Rptr. 663, 46 A.L.R.3d 1317]; *California B.G. Assn.* v. *Williams* (1927) 82 Cal.App. 434, 442 [255 P. 751].)

Actions on accounts stated frequently arise from a series of transactions which also constitute an open book account. (See, e.g., *Zinn* v. *Fred R. Bright Co., supra,* 271 Cal.App.2d 597; *Sure-Grip Skate Wheel Co., Inc.* v. *Bergin* (1962) 208 Cal.App.2d 562 [25 Cal.Rptr. 413].) However, an account stated may be found in a variety of commercial situations. The acknowledgement of a debt consisting of a single item may form the basis of a stated account. (*Jeanese, Inc.* v. *Surety Title & Gty. Co.* (1959) 176 Cal.App.2d 449 [1 Cal.Rptr. 752, 9 A.L.R.2d 495] (action against title company following demand letter for amount due on second trust deed where defendant trustor had mistakenly reconveyed property).) The key element in every context is agreement on the final balance due. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987), Contracts, § 917, p. 820.)

 Here, there is no evidence that Neal knew that he was indebted to Maggio or that he was aware that Maggio was maintaining an account which showed his increasing indebtedness. Certainly Neal's later failure to respond to letters sent in April and June cannot be viewed as acquiescence in light of the advice he received from his counsel. Thus there is insufficient evidence to establish an agreement on the balance due.

Our conclusion is simply another way of saying that Maggio did not satisfy its burden of proving Neal's debt was an account stated. Placing this burden on Maggio is only reasonable since Maggio could easily have avoided any loss by informing Neal on the occasion of each advance and/or on a regular basis thereafter that the advances were loans which Maggio expected to be repaid at some future date but in any event on termination of Neal's employment. It is the employer's responsibility to define the employment relationship in explicit terms. When the employer fails to do so, as Maggio has done here, it is reasonable that it, not the employee, should bear the risk of loss.

### III*

. . . . . . . . . . . . . . . . . . .

* See footnote, *ante,* page 745.

## DISPOSTION

The judgment is modified by reducing the principal amount to $45,000 and as modified the judgment is affirmed. The parties to bear their respective costs on this appeal.

Butler, J., concurred.

**BENKE, J.,** Concurring and Dissenting—I concur in the opinions expressed by the majority except as to the question of the existence of an account stated. I believe the record supports the conclusion an account stated does exist.

The agreement necessary to establish an account stated need not be expressed and is frequently implied from the circumstances. Further, when a statement is rendered to a debtor and no reply is made within a reasonable time, the law implies his agreement that the account is correct as rendered. (*Zinn* v. *Fred R. Bright Co.* (1969) 271 Cal.App.2d 597, 600 [76 Cal.Rptr. 663, 46 A.L.R.3d 1317]; *California B. G. Assn.* v. *Williams* (1927) 82 Cal.App. 434, 442 [255 P. 751].) I would not diminish the application of these rules because an employer-employee relationship, rather than a commercial transaction, is involved.

In late 1983, Carl made two telephone calls to Neal concerning repayment of the advances. During both telephone conversations, Neal did not deny owing money to the corporation based on the advances and, indeed, expressly stated that something could be worked out. In April and June of 1984, letters were sent to Neal requesting repayment of the $69,000 in advances. No responses were made to these requests. Neal's failure to reply to the letters of April and June 1984 was an implied agreement that the statements were correct as rendered. In fact, Neal presented no dispute to Carl regarding the existence of this debt until he responded to the case filed against him by Carl. I would thus affirm the lower court's conclusion an account stated has been demonstrated.