Filed 2/16/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| PROFESSIONAL COLLECTION CONSULTANTS, <br><br> Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> KRYSTAL G. LAURON <br><br> Defendant, Cross-complainant and Respondent. | H042686 <br> (Santa Clara County <br> Super. Ct. No. 1-11-CV-213127) |

This appeal arises out of a credit card debt collection action involving two credit cards. Appellant Professional Collection Consultants (PCC), as an assignee of the original creditor, filed a complaint against respondent Krystal Lauron alleging common counts of account stated and open book account. Lauron filed a cross-complaint alleging PCC was attempting to collect on a time-barred debt in violation of the federal Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. §§ 1692 et seq.) and California's Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code, § 1788 et seq.). In a motion for summary judgment on both complaints, Lauron argued that a Delaware statute of limitations applies to PCC's claims because the underlying credit card agreement (Cardmember Agreement) contains a Delaware choice-of-law provision. She further argued that, under Delaware's applicable three-year limitations period, PCC's claims were untimely. The trial court ruled that the gravamen of PCC's action was that Lauron had breached the Cardmember Agreement and that the action was barred by Delaware's three-year statute of limitations governing written contract claims. Accordingly, the

court entered summary judgment in Lauron's favor on PCC's complaint and her cross-complaint.

On appeal, PCC contends the trial court erred in applying Delaware law to its claims, which it says do not arise under the Cardmember Agreement. It maintains its claims are timely under the applicable California limitations period.

We will reverse and remand the matter to the trial court with directions. With respect to the first credit card, there is no evidence the Cardmember Agreement applies. Nor is there any evidence as to when PCC's claims accrued. Accordingly, Lauron has not established that PCC's claims seeking to collect on debt incurred on the first card were untimely. As to the second credit card, we agree with Lauron that Delaware's three-year limitations period applies to PCC's claims. However, the grant of summary judgment must be reversed because she has not established when PCC's claims accrued.

## I. FACTUAL BACKGROUND[1]

Lauron, a Santa Clara County resident, obtained two credit cards issued by JP Morgan Chase (Chase), one ending in 5285 and one ending in 5274. In connection with the card ending in 5274, Chase sent Lauron a Cardmember Agreement. It provides: "This agreement governs your credit card account with us . . . You promise to pay us for all transactions made on your account . . . [¶] You will be bound by this agreement if you or anyone authorized by you use your account for any purpose . . . ." With respect to "PAYMENTS," the Cardmember Agreement states "Your billing statement and accompanying envelope include instructions you must follow for making payments and sets forth the date and time by which we must receive the payment." The Cardmember Agreement includes a provision titled "GOVERNING LAW," which provides "THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL

---

[1] This factual summary is based on the facts the parties agreed were undisputed in the course of litigating their motions for summary judgment.

2

LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT."

No charges were made to the account ending in 5274 after June 8, 2008. Chase received the last payment on that account on October 30, 2008. The last item on the account was entered prior to November 13, 2008.

Chase sold both of Lauron's credit card accounts to Turtle Creek Assets Ltd., which sold them to Wireless Receivables Acquisition Group, LLC, which assigned the accounts for purposes of collection to PCC in March 2010.

## II.    PROCEDURAL BACKGROUND

On November 14, 2011, PCC filed a limited civil case against Lauron alleging common counts of open book account and account stated and seeking $10,000 in damages. Using the standard Judicial Council form for "COMPLAINT—Contract," PCC alleged that Chase was the original creditor on the claim at issue, which had been assigned to PCC. In discovery responses, PCC indicated that its complaint was based on two credit cards, one ending in 5285 and one ending in 5274.

Lauron filed a first amended cross-complaint seeking damages and judicial declarations that PCC (and other cross-defendants not involved in this appeal) had violated the FDCPA and the Rosenthal Act by, among other things, attempting to collect a time-barred debt. Thereafter, the case was reclassified as an unlimited civil case.

PCC moved for summary judgment on its complaint and Lauron's cross-complaint and sought summary adjudication of issues. The trial court denied those motions.

Lauron then moved for summary judgment on her cross-complaint and PCC's complaint. On July 9, 2015, the court issued an order granting Lauron summary judgment on PCC's claims, determining that Delaware's three-year state of limitations applied and that the limitations period had expired before PCC filed suit. In the same

3

order, the court also granted summary judgment to Lauron on her cross-claims, concluding that PCC was attempting to collect a time-barred debt in violation of the FDCPA and the Rosenthal Act. The court reasoned that, although PCC had characterized its claims as common counts, in fact, its action was one for breach of the Cardmember Agreement. In its order, the court did not mention or differentiate between the two credit card accounts at issue. The court entered judgment in Lauron's favor and against PCC on both PCC's complaint and Lauron's cross-complaint on July 23, 2015.

PCC timely appealed on August 7, 2015.

## III. DISCUSSION

### A. *Standard of Review*

"A defendant moving for summary judgment has the burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action." (*Jones v. Wachovia Bank* (2014) 230 Cal.App.4th 935, 945 (*Jones*).) The expiration of the applicable statute of limitations is one such complete defense. (*Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037; *Rose v. Fife* (1989) 207 Cal.App.3d 760, 770.) A defendant cannot "simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854 (*Aguilar*), fn. omitted), but "*must* 'support[ ]' the 'motion' with evidence." (*Id.* at p. 855.) "The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Ibid.*) "If a defendant's moving papers make a prima facie showing that justifies a judgment in its favor, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact." (*Jones*, *supra*, at p. 945.)

"[W]here the plaintiff has . . . moved for summary judgment[,] . . . [it] has the burden of showing there is no defense to a cause of action. (Code Civ. Proc., § 437c, subd. (a).) That burden can be met if the plaintiff 'has proved each element of the cause of action entitling [it] to judgment on that cause of action.' (Code Civ. Proc., § 437c, subd. (p)(1).) If the plaintiff meets this burden, it is up to the defendant 'to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' (§ 437c, subd. (p)(1).)" (*S.B.C.C.*, *Inc*. *v*. *St*. *Paul Fire & Marine Ins*. *Co*. (2010) 186 Cal.App.4th 383, 388.)

In reviewing an order granting summary judgment, we review the entire record de novo in the light most favorable to the nonmoving party to determine whether the moving and opposing papers show a triable issue of material fact. (*Addy v*. *Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214.)

### B. *Credit Card Account Ending in 5285*

As noted above, Lauron had two credit card accounts with Chase, both of which were the subject of PCC's complaint. On appeal, the parties do not distinguish between the two credit card accounts. PCC states that the appeal involves both credit cards. Lauron refers to a single "account," but also states that PCC "sufficiently briefed" the facts, which she says "are not in dispute," suggesting she agrees that both cards are at issue.

The parties direct us to nothing in the record establishing that the credit card account ending in 5285 is governed by the Cardmember Agreement. Nor have we found any such evidence in our review of the record. Accordingly, there is no basis for applying Delaware law to PCC's claims, to the extent they are based on that account.

Under California law, a four-year statute of limitations applies to actions for breach of contract, account stated, and open book account. (Code Civ. Proc., § 337.)[2]

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

"Ordinarily, a cause of action for breach of contract accrues on the failure of the promisor to do the thing contracted for at the time and in the manner contracted." (*Waxman v. Citizens Nat. Trust & Sav. Bk.* (1954) 123 Cal.App.2d 145, 149.) To the extent PCC's action is construed as one for breach of contract, it accrued when Lauron failed to pay for transactions made on her account by the date and time set forth on her billing statement. The parties do not direct us to any billing statements or other evidence indicating the date by which Lauron was required to make payments on the card ending in 5285, and "[w]e have no duty to search the record for evidence . . . ." (*Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928 (*Air Couriers Internat.*); *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 738 [" 'It is neither practical nor appropriate for us to comb the record . . .' "].)

Actions to recover on an account stated or a book account accrue on the date of the last item or entry in the account. (See § 337, subd. 2 ["where an account stated is based upon an account of more than one item, the time shall begin to run from the date of the last item"]; *R.N.C. Inc. v. Tsegeletos* (1991) 231 Cal.App.3d 967, 971-972 ["the four-year period of limitations on a book account begins as of the last entry in the book account"]; *Davidson v. Tilden* (1978) 86 Cal.App.3d 283, 287 [same].) The record does not demonstrate when the last item was entered in the account ending in 5285.[3]

Thus, regardless of whether PCC's action is construed as one for breach of contract or one for account stated and open book account, Lauron has not established that

---

[3] Lauron's Separate Statement of Undisputed Material Facts states, and PCC does not dispute, that "[t]he last item on the account which is the subject of this action was prior to November 13, 2008." The phrase "the account which is the subject of this action" is ambiguous. Elsewhere in her Separate Statement of Undisputed Material Facts, Lauron states that the "subject account was entered into pursuant to a Cardmember Agreement . . . ." The evidence supporting that statement is a Chase discovery response, which establishes that the Cardmember Agreement relates to "the subject account ([xxx-xxx-xxx]-5274) or related receivable." Accordingly, we conclude that the phrase "the account which is the subject of this action" refers to the credit card account ending in 5274.

6

it is untimely, to the extent it seeks to recover debt incurred on the account ending in 5285.  As such, she is not entitled to summary judgment because she has not established a complete statute of limitations defense.  Nor is Lauron entitled to summary judgment on her cross-complaint, to the extent it is based on PCC's attempts to collect on the credit card account ending in 5285.  The gravamen of Lauron's cross-claims is that PCC's debt collection action was time-barred.   For the reasons discussed above, she has not established that the applicable statute of limitations expired before PCC filed suit.  As such, she has not proved each element of her claims.  (§ 437c, subd. (p)(1).)

### C. Credit Card Account Ending in 5274

#### 1. Applicable Statute of Limitations

PCC contends the trial court erred in applying 10 Del. C. § 8106, Delaware's three-year statute of limitations on actions for breach of contract, to its action.  According to PCC, its common counts of account stated and open book account are not based on the Cardmember Agreement, such that its Delaware choice-of-law provision has no application.  Instead, PCC maintains California's four-year statute of limitations for actions to recover upon a book account or an account stated applies.  (§ 337.)  Lauron responds that claims for account stated and open book account sound in contract, such that the Cardmember Agreement's choice-of-law provision applies.

##### a. Legal Principles

"The statute of limitations that applies to an action is governed by the gravamen of the complaint, not the cause of action pled." (*City of Vista v. Robert Thomas Securities, Inc.* (2000) 84 Cal.App.4th 882, 889.)  It is the substance of the action, rather than the form of the pleading or the labels employed, that governs.  (*Giffin v. United Transportation Union* (1987) 190 Cal.App.3d 1359, 1362 (*Giffin*).)

At issue here is whether PCC's action is one for breach of contract (as the trial court concluded) or account stated and open book account (as PCC contends).  Accordingly, we briefly consider the nature of each of those causes of action.

7

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.)

An account stated is "an agreement, based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing." (*Maggio, Inc. v. Neal* (1987) 196 Cal.App.3d 745, 752 (*Maggio*).) "[A]n element essential to render the account stated is that it receive the assent of both parties, but the assent of the party sought to be charged may be implied from his conduct." (*Hansen v. Fresno Jersey Farm Dairy Co.* (1934) 220 Cal. 402, 408 (*Hansen*).) For example, "[w]hen a statement is rendered to a debtor and no reply is made in a reasonable time, the law implies an agreement that the account is correct as rendered." (*Maggio*, *supra*, at p. 753.) A number of jurisdictions have applied this principle in the context of credit card debt, concluding that where a debtor receives and does not object to a credit card statement, an agreement to the amount due can be inferred.[4] (*Capital One Bank (USA), N.A. v. Denboer* (Iowa Ct. App.2010) 791 N.W.2d 264, 273 [citing cases]; *Hashimi v. CACH, LLC* (S.D. Cal., Aug. 22, 2012) No. 12CV1010-MMA, 2012 U.S. Dist. LEXIS 118988 [assignee of credit card debt adequately alleged account stated cause of action where it alleged the original creditor issued a final billing statement and the debtor did not object to the statement].) When an account stated is " 'assented to, either expressly or impliedly, it becomes a new contract.' " (*Gardner v. Watson* (1915) 170 Cal. 570, 574 (*Gardner*).) "The theory of an account stated is that it becomes a contract between the parties for payment of the amount computed to be due without proof of the specific items included therein." (*Hansen*, *supra*, at pp. 407-408.) Accordingly, an

---

[4] We express no opinion as to whether common counts are an appropriate vehicle for collecting credit card debt under California law.

8

action on an account stated is not based on the parties' original transactions, but on the new contract under which the parties have agreed to the balance due. (*Gardner*, *supra*, at p. 574.)

A "book account" is "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, and shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, is entered in the regular course of business as conducted by such creditor or fiduciary, and is kept in a reasonably permanent form and manner and is (1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner." (§ 337a.) Examples of statements held to be book accounts include a law firm's billing statements reflecting work performed on an hourly basis (*In re Roberts Farms*, *Inc*. (9th Cir. 1992) 980 F.2d 1248, 1252, applying California law) and a ledger sheet recording amounts due for hay deliveries (*Costerisan v*. *DeLong* (1967) 251 Cal.App.2d 768, 769-771). A book account is "open" where a balance remains due on the account. (*Interstate Group Administrators*, *Inc*. *v*. *Cravens*, *Dargan & Co*. (1985) 174 Cal.App.3d 700, 708; *Reigelsperger v*. *Siller* (2007) 40 Cal.4th 574, 579, fn. 5.) "An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account." (*Durkin v*. *Durkin* (1955) 133 Cal.App.2d 283, 290.) However, the parties may agree to treat money due under an express contract, such as a lease, as items under an open book account. (*Parker v*. *Shell Oil Co*. (1946) 29 Cal.2d 503, 507.) "[I]n such a case the cause of action is upon the account, not under the [express contract]." (*Ibid*.)

> ### b. *The Trial Court Did Not Err in Concluding That the Gravamen of PCC's Action is Breach of Contract*

PCC's argument regarding the character of its action is founded upon a fundamental misunderstanding of the law. PCC contends that "an action for an Open

9

Book Account and Account Stated supersedes, extinguishes and replaces all the underlying contracts . . . ." According to PCC, its own lawsuit extinguished the Cardmember Agreement merely by asserting claims labeled "open book account" and "account stated." For that view, PCC relies on *Zinn v. Fred R. Bright Co.* (1969) 271 Cal.App.2d 597 (*Zinn*). There, the defendant employer orally agreed to pay the decedent employee a bonus based on its profit. (*Id.* at pp. 599, 602.) As payment, the employer delivered a check to the employee, which the employee retained but did not cash. The court inferred an agreement that the amount set forth in the check was the amount due based on "the fact that decedent accepted the check, retained it for a long period of time and made no protest to the defendant concerning it." (*Id.* at p. 601.) The court concluded that new agreement constituted an account stated and that it "supersede[d] and extinguishe[d] the original obligation" (i.e., the oral agreement). (*Id.* at p. 604.) PCC relies on that language for its position that a complaint asserting common counts replaces the underlying contract. Not so. It is the new agreement as to the amount due—referred to as the "account stated"—that replaces the underlying obligation. (*Maggio*, *supra*, 196 Cal.App.3d at p. 752.) In *Zinn*, the check and the employee's retention of it evidenced the requisite new agreement.

Thus, a complaint asserting common counts does not supersede the underlying contract; and the mere fact that PCC labeled its claims "account stated" and "open book account" does not mean the gravamen of its complaint is not breach of contract. (*Giffin*, *supra*, 190 Cal.App.3d 1359 [labels do not govern].) Rather, to determine the gravamen of PCC's action, we look to its underlying theory of relief. PCC asserts that its open book account claim is based on Lauron's monthly credit card statements, while its account stated claim is premised on her last monthly credit card statement. As PCC notes, federal courts applying California law have concluded that monthly credit card statements may form the basis for an account stated. For example, in *O'Bryne v. Portfolio Recovery Associates LLC* (S.D. Cal., Mar. 26, 2013) No. 12CV447-IEG NLS,

10

2013 U.S. Dist. LEXIS 42922, a debtor asserted FDCPA and Rosenthal Act claims against a credit card debt collector. The debtor argued that the debt collector falsely represented the legal status of the debt, in violation of the FDCPA, by suing under an account stated theory, when an account stated never existed. The court disagreed. It concluded that the elements of an account stated claim were satisfied because the credit card company had sent a final billing statement and the debtor had implicitly agreed to the amount due in the statement by not timely objecting. (2013 U.S. Dist. LEXIS 42922 *15-16.) According to PCC, it submitted into evidence 18 months of monthly credit card statements issued to Lauron, which form the basis for its claims. However, PCC does not cite to the record and our review of the record uncovered no monthly credit card statements.

"Any statement in a brief concerning matters in the appellate record—whether factual or procedural and no matter where in the brief the reference to the record occurs—*must be supported by a citation to the record.*" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶ 9:36, pp. 9-12 (Rutter), citing rule 8.204(a)(1)(C).) We have the discretion to disregard contentions unsupported by proper page cites to the record. (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1025; *Regents of University of California v. Sheily* (2004) 122 Cal.App.4th 824, 827, fn. 1; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1310, fn. 3.) Even taking PCC's contention into account, its failure to cite to the record precludes it from demonstrating the trial court erred in construing its action as one for breach of contract. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573 ["Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error"].) The basis of PCC's action is that Lauron failed to pay her credit card bill on an account assigned to PCC for collection purposes. Record evidence establishes that Lauron is contractually obligated to pay her credit card bill by the Cardmember Agreement. And,

11

as noted, PCC has failed to demonstrate that its claims were premised on monthly credit card statements. In this context, the trial court did not err in concluding that PCC's action is in reality one for breach of the Cardmember Agreement. (*Agair Inc*. *v*. *Shaeffer* (1965) 232 Cal.App.2d 513, 516 ["the true nature of the action will be ascertained from the basic facts *a posteriori*"].)

We need not decide whether the gravamen of *any* credit card debt collection action involving a cardmember agreement is breach of contract.[5] We simply conclude that PCC

---

[5] The trial court concluded that Lauron's credit card debt could not be the basis of an account stated because it was based on a breach of the Cardmember Agreement. For that conclusion, it cited *Moore v*. *Bartholomae Corp*. (1945) 69 Cal.App.2d 474 (*Moore*). Relying on *Rio Linda Poultry Farms v*. *Fredericksen* (1932) 121 Cal.App. 433 (*Rio Linda*), *Moore* concluded that "[t]he law is established in California that a debt which is predicated upon the breach of the terms of an express contract cannot be the basis of an account stated." (*Moore*, *supra*, at pp. 477-478 [no account stated established where plaintiff sought to recover damages "arising from the breach of an express contract for the payment of money" (specifically, an oil and gas lease)].) In *Rio Linda*, the court explained that "not every debt . . . can form the basis of an account stated or an action thereon. [An action on an account stated] cannot become a substitute for an action of debt upon a specialty, such as a promissory note. In such a case no subsequent statement of the amount due thereon, although agreed to by the payer, can supersede the special promise so as to form the basis of an action as upon an account stated to recover the original debt. The written promise being higher evidence of the debt and the debtor being already bound thereby, there could be no necessity for a resort to a subsequent statement and promise to pay. Moreover, the debtor being already completely bound for a specified sum, there is no element of uncertainty to be settled, and no difficulty in ascertaining the balance upon conflicting claims, which could constitute a consideration for a new promise to pay, and therefore such promise would be a *nudum pactum*." (*Rio Linda*, *supra*, at pp. 435-436, citing *Bennett v*. *Potter* (1919) 180 Cal. 736, 745 (*Bennett*).)

The rationale for the rule first articulated in *Bennett* and stated in *Moore* is that the original express contract is the best evidence of the amount due *where it binds the debtor to pay a specified sum*. We are not convinced that rule applies in the context of contracts that do not bind the debtor to pay a specific sum, such as the Cardmember Agreement at issue here. However, given that the gravamen of PCC's action is breach of contract, we can leave to another day the question whether an account stated claim may be used to collect credit card debt incurred in connection with a credit card governed by a cardmember agreement.

has failed to demonstrate the trial court erred in determining the gravamen of its action is breach of contract.

### c.　The Delaware Statute of Limitations Applies

Having determined that the gravamen of PCC's action is breach of the Cardmember Agreement, we must determine what statute of limitations applies. Lauron argues the Cardmember Agreement's choice-of-law provision requires application of the Delaware statute of limitations. PCC contends the choice-of-law provision calls for the application of federal limitations law. Alternatively, PCC maintains the choice-of-law provision is unenforceable because the Cardmember Agreement is unsigned.

### i.　The Choice-of-Law Provision Calls for the Application of Delaware Law

The Cardmember Agreement provides: "THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT."

For the first time on appeal, PCC contends the foregoing provision requires the application of the federal catchall four-year statute of limitations, 28 U.S.C. § 1658. We reject that argument for two reasons. First, PCC did not raise it below. Instead, in its separate statement of undisputed facts, it agreed with Lauron that the Cardmember Agreement contains a "Delaware Choice of Law Provision." " '[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court. [Citation.]' (*Asbestos Claims Facility v. Berry & Berry* (1990) 219 Cal.App.3d 9, 26; see also *JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178:

13

'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.') We will therefore 'ignore arguments, authority, and facts not presented and litigated in the trial court.' [Citation.] Such arguments raised for the first time on appeal are generally deemed forfeited. [Citation.]" (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592.) Second, 28 U.S.C. § 1658 "prescribes a 4-year statute of limitations for 'civil action[s] *arising under an Act of Congress* enacted after' December 1, 1990." (*Jones v. R.R. Donnelley & Sons Co.* (2004) 541 U.S. 369, 375, italics added.) PCC's breach of contract action does not arise under an Act of Congress; it is a state law claim. Accordingly, state law governs. Per the choice-of-law provision, the applicable law is that of the state of Delaware.

### ii.     The Choice-of-Law Provision is Enforceable

To determine the enforceability of an arm's-length contractual choice-of-law provision, such as the one in the Cardmember Agreement, we "apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." (*Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 464-465 (*Nedlloyd*).) Specifically, we begin by determining whether (1) "the chosen state has a substantial relationship to the parties or their transaction, or (2) . . . there is any other reasonable basis for the parties' choice of law. . . . If . . . either test is met, [we] must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, [we] shall enforce the parties' choice of law." (*Id.* at pp. 466-467.)

Here, the chosen state is Delaware. The substantial relationship test is satisfied because Chase's principal place of business is in Delaware. (See Rest.2d Conf. of Laws, § 187, com. f. ["the state of the chosen law has some substantial relationship to the parties or the contract [and] the parties will be held to have had a reasonable basis for their choice . . . where one of the parties is domiciled or has his principal place of

14

business" in that state].) Accordingly, we must consider whether Delaware law conflicts with a fundamental California policy. The California and Delaware statutes of limitations governing breach of contract claims differ. Delaware's limitations period is three years; California's is four years. (10 Del. C. § 8106; § 337.) "California allows contracting parties to both shorten and extend limitation periods and has no discernible fundamental policy against the application of other jurisdictions' limitation periods." (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 835.) Accordingly, we discern no conflict between Delaware's limitations period and fundamental California policy.

PCC contends that the choice-of-law provision nevertheless is unenforceable because the Cardmember Agreement is unsigned. For that argument, PCC relies on section 360.5, which provides that statute of limitations waivers are invalid unless signed by the person obligated. The present case does not involve *waiver* of the right to assert the statute of limitations. Rather, the contract provision at issue indicates which body of law governs the agreement. Accordingly, section 360.5 has no application.

For the first time in its reply brief, PCC argues the Cardmember Agreement is not a valid contract because it is unsigned. We disregard that belated contention. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1478.)

For the foregoing reasons, we conclude the choice-of-law provision is enforceable and Delaware's three-year limitations period governs PCC's action.

### 2. *Lauron Failed to Establish That PCC's Action Was Untimely*

PCC filed suit on November 14, 2011. Its action was timely only if its breach of contract claim accrued in the three years preceding that date. Under Delaware law, a breach of contract claim accrues at the time of the breach. (*Nardo v. Guido DeAscanis & Sons, Inc.* (Del. Super. Ct. 1969) 254 A.2d 254, 256.) Lauron breached the Cardmember Agreement when she failed to pay for transactions made on her account by the date and time set forth on her billing statement.

15

The parties point us to no evidence establishing the date by which Lauron was required to make payments. As noted above, "[w]e have no duty to search the record for evidence . . . ." (*Air Couriers Internat.*, *supra*, 150 Cal.App.4th at p. 928; *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745 [" 'We are a busy court which "cannot be expected to search through a voluminous record to discover evidence on a point raised by [a party] when his brief makes no reference to the pages where the evidence on the point can be found in the record." ' "].) Accordingly, Lauron failed to establish when the breach occurred to trigger the commencement of the running of the statute of limitations. Thus, she has not shown that PCC's action was untimely, and she is not entitled to summary judgment on PCC's complaint or her cross-complaint.

The trial court determined that PCC's action was untimely based on evidence that the last item was entered on the account prior to November 13, 2008. The parties appear to agree that the running of the statute was triggered when the last item was entered on the account. But that is the accrual date under California law for actions to recover on an account stated or a book account. (§ 337, subd. 2.) We, like the trial court, have construed PCC's action as one for breach of contract. That cause action accrued when Lauron breached the terms of the Cardmember Agreement by non-payment.

PCC contends that its claim is timely, regardless of when its cause of action accrued, because the limitations period has been tolling while Lauron is not in Delaware. For that position, PCC relies on 10 Del. C. § 8117 (section 8117), which provides, in relevant part: "If at the time when a cause of action accrues against any person, such person is out of the State, the action may be commenced, within the time limited therefor in this chapter, after such person comes into the State in such manner that by reasonable diligence, such person may be served with process. . . ."

Numerous courts outside of Delaware have declined to apply section 8117 where it would result in indefinite tolling. Most have read section 8117 as applying "only to actions that are actually filed in a Delaware court or actions that could have been filed in

a Delaware court" to avoid the "absurd" result of indefinite tolling.  (See *Resurgence Financial*, *LLC v*. *Chambers* (2009) 173 Cal.App.4th Supp. 1, 5-6 (*Resurgence*); *McCorriston v*. *L.W.T*., *Inc*. (M.D. Fla. 2008) 536 F.Supp.2d 1268, 1276 (*McCorriston*); *Lehman Brothers Holdings*, *Inc*. *v*. *First Cal*. *Mort*. *Corp*. (D. Colo., Apr. 30, 2014) No. 13-CV-02113-CMA-KMT, 2014 U.S. Dist. LEXIS 60573 *10-12; *Izquierdo v*. *Easy Loans Corp*. (D. Nev., June 19, 2014) No. 2:13-CV-1032-MMD-VCF, 2014 U.S. Dist. LEXIS 84483 *20-22 (*Izquierdo*).)  At least two courts have read section 8117 literally as allowing for indefinite tolling, but have declined to apply the statute, invoking state laws permitting the avoidance of unfair foreign limitations periods.  (See *CACV of Colorado*, *LLC v*. *Stevens* (Or. App. 2012) 248 Ore. App. 624, 638 (*CACV*) [applying Oregon limitations period based on conclusion that application of Delaware law would impose an unfair burden on defendant by eliminating a statute-of-limitation defense]; *Unifund CCR Partners v*. *Sunde* (Wash. App. Div. 2 2011) 163 Wn. App. 473, 489 (*Unifund*) [applying Washington limitations period because Delaware limitations period "could be tolled forever, causing an obvious 'unfair burden [on Sunde] in defending against [the claim].' "]; *Izquierdo*, *supra*, 2014 U.S. LEXIS 84483 *18 [noting that the *CACV* and *Unifund* courts avoided applying section 8117 by "invoking [Oregon and Washington's] adoption of the Uniform Conflicts of Law Limitations Act (UCLLA) and its 'escape clauses' "].)

Under a literal reading of section 8117, the applicable statute of limitations is tolled until Lauron becomes amenable to service of process in Delaware.  Lauron resides in California and may never be amenable to service of process in Delaware, in which case the limitations period could be tolled forever, effectively abolishing any statute of limitations defense.  (*Unifund*, *supra*, 163 Wn. App. at p. 489; *McCorriston*, *supra*, 536 F.Supp.2d at p. 1276.)  Such a result is absurd. (*Resurgence*, *supra*, 173 Cal.App.4th Supp. at p. 6.)  Both California and Delaware law permit courts to disregard a statute's literal meaning to avoid absurd results.  (*Times Mirror Co*. *v*. *Superior Court* (1991) 53

17

Cal.3d 1325, 1335, fn. 7; *Taggart v. George B. Booker & Co.* (Del. Super. Ct. 1942) 42 Del. 128, 134.)  We do so here and, like the courts in *Resurgence* and *Izquierdo*, construe section 8117 as having no application to actions such as this that were not and could not have been brought in Delaware.[6]  Therefore, we reject PCC's tolling argument.

Finally, PCC claims Lauron's award of statutory damages should be offset against its claims against her under section 431.70.  Because we are reversing the judgment, including the award of statutory damages, we need not address that contention.

## IV.    DISPOSITION

The judgment is reversed and the matter is remanded to the trial court.  On remand, the trial court is directed to vacate its order granting summary judgment to Lauron and to enter a new order denying summary judgment.  The parties shall bear their own costs on appeal.

---

[6] Federal and state law precluded PCC from bringing its debt collection action against Lauron in Delaware.  Federal law requires debt collectors to bring collection actions against consumers in the judicial district in which the consumer signed the contract sued upon or in which the consumer resides at the commencement of the action. (See 15 U.S.C. § 1692i(a)(2); *Resurgence*, *supra*, 173 Cal.App.4th Supp. at p. 5, fn. 3; *CACV*, *supra,* 248 Or.App. at p. 632.)  State law requires that such actions be brought in "the county in which the debtor has incurred the consumer debt or the county in which the debtor resides at the time such proceedings are instituted, or resided at the time the debt was incurred." (*Resurgence*, *supra*, 173 Cal.App.4th Supp. at p. 5, fn. 4, quoting Civ. Code § 1788.15, subd.(b).)

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.


*Professional Collection Consultants v. Lauron*
H042686

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: 1-11-CV-213127 |

| Trial Judge: | Honorable Joseph Huber |

| Counsel for Plaintiff, Cross-defendant and Appellant:<br>PROFESSIONAL COLLECTION CONSULTANTS | Law Offices of Clark Garen<br>Clark Garen |

| Counsel for Defendant, Cross-complainant and Respondent:<br>KRYSTAL G. LAURON | Consumer Law Center, Inc.<br>Frederick W. Schwinn<br>Raeon R. Roulston |