Filed 12/22/25  Bank of America v. Buenzli CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| BANK OF AMERICA, N.A., | |
| Plaintiff and Respondent, | C101716 |
| v. | (Super. Ct. No. 23CV0584) |
| WILLIAM B. BUENZLI, | |
| Defendant and Appellant. | |

Bank of America, N.A., (the Bank) brought a credit card debt collection action against William Buenzli based on an "account stated" cause of action.  The trial court entered judgment in favor of the Bank.  Buenzli now contends the judgment must be reversed because (1) he did not assent to an account stated and there was no competent evidence of his liability, the amount owed, or the contractual basis for his alleged debt to the Bank; (2) the Bank did not meet its burden under Civil Code section 1788.58; and (3) the trial court failed to meaningfully consider his evidence and arguments.

Finding no merit in Buenzli's contentions, we will affirm the judgment.

BACKGROUND

The Bank filed a complaint against Buenzli on April 20, 2023.  A copy of the complaint is not in the appellate record.

1

Buenzli filed an answer on August 25, 2023. The answer included a document titled "Affidavit of Truth" dated July 28, 2023, but the purported affidavit did not contain an affirmation or declaration under penalty of perjury. (Code Civ. Proc., § 2003 [an affidavit is a written declaration under oath]; Evid. Code, § 165 [an oath includes an affirmation or declaration under penalty of perjury].) The purported affidavit stated that on November 2, 2022, Buenzli sent the Bank a coupon for $25,735.30 as payment from Buenzli's trust, the Bank kept the coupon, and the Bank was required to accept the payment under "HJR 192 of 1933 and 15 USC 1992 A-K."[1]

A copy of a November 2, 2022 letter from Buenzli to the Bank regarding an account ending in 9209 was attached to the answer. In that letter, Buenzli acknowledged he had received statements from the Bank and had sent the Bank payments by check or electronic fund transfer over the years, but he claimed there was a trust, with Buenzli as beneficiary and the Bank as trustee, that existed to pay his debts. He accused the Bank of "double dipping" and committing trust fraud by redeeming his coupon and also accepting his check and electronic fund transfer payments. Buenzli offered the Bank a signed coupon from his trust as payment in full on his account. He enclosed the following document with his letter.

---

[1] "HJR 192" appears to refer to House Joint Resolution 192, codified at title 31 United States Code section 5118, which provided for the suspension of the gold standard. (*Pinckney v. U.S. Government - I.R.S.* (D.S.C., Jan. 27, 2020, C/A No. 2:19-3046-BHH-BM) 2020 WL 3474011, at *4.) Complaints seeking to invalidate loans based on House Joint Resolution 192 have been rejected in federal courts. (*Estes v. Toyota Financial Service* (E.D.N.Y., Jan. 13, 2015, No. 14-CV-1300 (JFB) (SIL)) 2015 WL 222137, at *5; see generally *Gravatt v. United States* (Fed. Cl. 2011) 100 Fed.Cl. 279, 283 [explaining theory based in part on House Joint Resolution 192]; *Bryant v. Wash. Mut. Bank* (W.D. Va. 2007) 524 F.Supp.2d 753, 758-760 [same].) Title 15 of the United States Code does not contain a section 1992.

A July 28, 2023 letter from Buenzli to the trial court was also attached to the answer. The letter stated that Buenzli was not refusing to pay the Bank, but he disputed the Bank's claim and requested validation of his alleged debt under the "Fair Debt Collection Practices Act, 15 USC 1692g Sec. 809 (b)."[2]

A bench trial took place on April 30, 2024. Buenzli appeared and represented himself. The Bank's witness, George Garcia, identified the agreement governing Buenzli's credit card account and the billing statements for that account. Buenzli did not object to the admission of those documents into evidence. Garcia testified that the credit card account was opened in 2006 and closed in January 2023. He said the last billing statement the Bank generated for the account was for the period December 26, 2022 to January 25, 2023. According to Garcia, $26,980.93 was due at that time, and the last payment of $540 was made on August 15, 2022. Garcia testified that when no payment was received in November 2022, the Bank made a demand for payment and Buenzli did not dispute that he owed the Bank $26,980.93.

---

[2] Section 1692g of title 15 of the United States Code is part of a statute relating to abusive, deceptive, and unfair debt collection practices. (See 15 U.S.C. § 1692.) Section 1692g sets forth, in part, the information a debt collector must provide in writing to a consumer. (15 U.S.C. § 1692g, subd. (a).) It is unclear what "Sec. 809" references.

3

Buenzli testified that the Bank loaned him money through his credit card account by taking money out of his que vie trust, which he also referred to as his social security account.[3]  Citing title 12 United States Code section 1431, he claimed that banks could not loan money because banks were borrowers,[4] and under title 15 United States Code section 1602(g), consumers were creditors.[5]  He urged that it was unlawful for the Bank to ask for a person's social security number on a credit transaction or loan, citing title 42 United States Code section 404.[6]  He testified that Uniform Commercial Code section 3-104 described a negotiable instrument, but he did not explain how a negotiable instrument might be relevant to the action or his defense.  He further stated that under

---

[3] *Ammon v. United States* (Fed. Cl. 2019) 142 Fed.Cl. 210 exemplifies an argument based in part on a cestui que vie trust claim that Buenzli appeared to make.  (*Id.* at pp. 214-217 & fn. 1.)  The case involved a prisoner's action to redeem an alleged savings bond.  (*Id.* at p. 213.)  The plaintiff claimed he was a beneficiary of a cestui que vie trust held by the United States Treasury for which he was issued a certificate or bond.  (*Id.* at p. 216.)

[4] Title 12 United States Code section 1431 defines the general powers of federal home loan banks to borrow and lend funds and otherwise conduct business.  (9 C.J.S. (2025) Banks and Banking, § 696; see generally 2 West's Fed. Admin. Prac. (July 2025 Update) §§ 1920, 1924-1925, 1931 [explaining federal home loan bank system].)  Buenzli did not show that a federal home loan bank had been involved in the present case.

[5] Title 15 United States Code section 1602, subdivision (g) defines a "creditor" as including "a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."  Buenzli did not establish that he was a person who regularly extended consumer credit or was otherwise a creditor within the meaning of title 15 United States Code section 1602, subdivision (g).

[6] Title 42 United States Code section 404 relates to overpayments and underpayments of federal old age, survivors, and disability insurance benefits.  (See generally 81 C.J.S. (2025) Social Security and Public Welfare, §§ 92, 121.)  It does not mention credit card or loan transactions.

title 31 United States Code section 5118, a person could discharge debts and tender payment in a form that was not legal tender.[7] Citing section 3505 of the California Uniform Commercial Code, he claimed he was entitled to issue a "notice of dishonor" when the Bank rejected an instrument issued by him. Buenzli added that the Bank did not respond to his Affidavit of Truth, request for validation of debt, or writ of discovery.

---

[7] The cited statute does not say so. Rather, title 31 United States Code section 5118 provides: "(a) In this section -- [¶] (1) 'gold clause' means a provision in or related to an obligation alleging to give the obligee a right to require payment in -- [¶] (A) gold; [¶] (B) a particular United States coin or currency; or [¶] (C) United States money measured in gold or a particular United States coin or currency. [¶] (2) 'public debt obligation' means a domestic obligation issued or guaranteed by the United States Government to repay money or interest.

"(b) The United States Government may not pay out any gold coin. A person lawfully holding United States coins and currency may present the coins and currency to the Secretary of the Treasury for exchange (dollar for dollar) for other United States coins and currency (other than gold and silver coins) that may be lawfully held. The Secretary shall make the exchange under regulations prescribed by the Secretary.

"(c) [¶] (1) The Government withdraws its consent given to anyone to assert against the Government, its agencies, or its officers, employees, or agents, a claim -- [¶] (A) on a gold clause public debt obligation or interest on the obligation; [¶] (B) for United States coins or currency; or [¶] (C) arising out of the surrender, requisition, seizure, or acquisition of United States coins or currency, gold, or silver involving the effect or validity of a change in the metallic content of the dollar or in a regulation about the value of money. [¶] (2) Paragraph (1) of this subsection does not apply to a proceeding in which no claim is made for payment or credit in an amount greater than the face or nominal value in dollars of public debt obligations or United States coins or currency involved in the proceeding. [¶] (3) Except when consent is not withdrawn under this subsection, an amount appropriated for payment on public debt obligations and for United States coins and currency may be expended only dollar for dollar.

"(d) [¶] (1) In this subsection, 'obligation' means any obligation (except United States currency) payable in United States money. [¶] (2) An obligation issued containing a gold clause or governed by a gold clause is discharged on payment (dollar for dollar) in United States coin or currency that is legal tender at the time of payment. This paragraph does not apply to an obligation issued after October 27, 1977."

Nevertheless, Buenzli agreed he had a credit card account with the Bank. He acknowledged about $25,000 was due on his account. He testified that he sent the Bank a coupon for the full amount due on November 2, 2022, and the Bank took his coupon and closed his account. He asserted that money had been deducted from his cestui que vie or social security trust. He also said the Bank cashed his personal checks, accepted his electronic funds transfer payment, and redeemed his coupon. He again described such action as double dipping and trust fraud. Buenzli testified that he did not receive full disclosure of all material facts regarding any alleged loan, and thus there was no mutual consent for a contract.

The trial court noted Buenzli's admission that he had a credit card account with the Bank. It found no merit in Buenzli's arguments, and no legal authority to support the proposition that sending a coupon to the Bank effected a transfer of funds. The trial court entered judgment in favor of the Bank and against Buenzli in the amount of $26,829.95.

DISCUSSION

I

Buenzli contends he did not assent to an account stated and there was no competent evidence of his liability, the amount owed, or the contractual basis for his alleged debt.

"An account stated is an agreement, based on prior transactions between the parties, that all items of the account are true and that the balance struck is due and owing from one party to the other." (*Trafton v. Youngblood* (1968) 69 Cal.2d 17, 25 (*Trafton*).) The elements of the cause of action are "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; [and] (3) a promise by the debtor, express or implied, to pay the amount due." (*Zinn v. Fred R. Bright Co.* (1969) 271 Cal.App.2d 597, 600; accord *Bennett v. Potter* (1919) 180 Cal. 736, 745.) Monthly credit card statements may form the basis for an account stated. (*Professional*

6

*Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970 (*Professional Collection Consultants*).)

Agreement on the final balance due is essential to an action on an account stated. (*Maggio, Inc. v. Neal* (1987) 196 Cal.App.3d 745, 753.) Agreement may be implied from the debtor's failure to respond or object, within a reasonable time, to the account rendered by the creditor. (*Trafton, supra*, 69 Cal.2d at p. 25; *Crane v. Stansbury* (1916) 173 Cal. 631, 636; *Hendy v. March* (1888) 75 Cal. 566, 567 (*Hendy*); *Professional Collection Consultants, supra,* 8 Cal.App.5th at p. 968; *Maggio*, at p. 753; *Atkinson v. Golden Gate Tile Co.* (1913) 21 Cal.App. 168, 170-171.)

Buenzli asserts that the Bank failed to prove an account stated because he disputed the debt and did not assent to an account stated. However, at the trial he agreed he had a credit card account with the Bank and he owed the Bank about $25,000. Garcia's testimony established that Buenzli's credit card account was opened in 2006, the Bank sent Buenzli billing statements, Buenzli's last payment was made in August 2022, the last statement was generated in January 2023, and the balance due was $26,980.93. There was no evidence Buenzli did not receive the billing statements or that prior to the Bank's lawsuit, he objected to any billing statement or disputed that he owed the amount shown in the final billing statement. Instead, Buenzli said he attempted to pay the balance due in November 2022. By his conduct, Buenzli agreed he owed the Bank $25,735.30 in November 2022. Based on all of the above, substantial evidence supported the judgment in favor of the Bank based on an account stated.

Buenzli argues the trial court erred in admitting the credit card billing statements identified by Garcia. But Buenzli forfeited this claim by failing to object to the admission of the billing statements at the trial. (Evid. Code, § 353, subd. (a); *Seibert v. City of San Jose* (2016) 247 Cal.App.4th 1027, 1057-1058.) Although he claims on appeal that the billing statements are incomplete, he does not state what information is missing, and the statements are not in the appellate record. (See generally *Axis*

7

*Petroleum Co. v. Taylor* (1941) 42 Cal.App.2d 389, 398 [stating that the party disputing the correctness of an account bears the burden to prove that the account is incorrect]; *Fee v. McPhee Co.* (1916) 31 Cal.App. 295, 313.)

In addition, Buenzli contends the Bank did not present the original contract, an itemized transaction history, or proof of how his debt was calculated. However, an action on an account stated is not based on the original contract between the parties, but rather on a new contract under which the parties agreed to the balance due. It does not require proof of the specific items in the account. (*Gardner v. Watson* (1915) 170 Cal. 570, 574; *Hendy, supra*, 75 Cal. at p. 568; *Auzerais v. Naglee* (1887) 74 Cal. 60, 64-65; *Professional Collection Consultants, supra*, 8 Cal.App.5th at p. 968; *Gleason v. Klamer* (1980) 103 Cal.App.3d 782, 786-787.) For that reason, inquiry may not be had into the original dealings and transactions of the parties, except upon equitable considerations such as fraud, duress, or mistake, which must be alleged in the pleadings. (*Gardner*, at p. 574.) To the extent Buenzli's answer can be construed to plead fraud, the record indicates the Bank presented the credit card agreement, along with three years of billing statements, at trial. The Bank was not otherwise required to submit the original contracts, an itemized transaction history, or proof of how Buenzli's debt was calculated.

The record does not support Buenzli's contention that he moved for dismissal of the complaint, demurred to the complaint, or filed a motion for summary judgment or adjudication.

## II

Buenzli next claims the Bank did not meet its burden under Civil Code section 1788.58. That section governs actions brought by a debt buyer on a consumer debt. A debt buyer is "a person or entity that is regularly engaged in the business of purchasing charged-off consumer debt for collection purposes . . . ." (Civ. Code, § 1788.50, subd. (a)(1).)

Nothing in the appellate record shows that the Bank was a debt buyer within the meaning of Civil Code sections 1788.50 and 1788.58. Buenzli's Civil Code section 1788.58 claim lacks merit, and so does his apparent claim that his debt was assigned. Nothing in the record shows an assignment. Rather, Buenzli testified his account was with the Bank.

                                                    III

Buenzli further contends the trial court failed to meaningfully consider his evidence and arguments. But the appellate record does not support this assertion. The trial court reviewed the documents filed by Buenzli: his answer, an IRS Form 56 document, and another document. Buenzli did not ask the trial court to review any other documents. The trial court also said it considered the authorities cited by Buenzli, but it did not find his arguments persuasive.

                                            DISPOSITION

The judgment is affirmed.


                                                    /S/
                                            MAURO, Acting P. J.



We concur:


        /S/
DUARTE, J.


        /S/
WISEMAN, J.*

_____


* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.