Filed 4/19/16  Swearinger v. Humenik CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WILLIAM SWEARINGER, as Administrator, etc.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>EDWARD HUMENIK, as Trustee, etc.,<br><br>      Defendant and Respondent. | B258174<br><br>(Los Angeles County<br>Super. Ct. No. EC056445) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Donna F. Goldstein, Judge.  Affirmed.

Law Offices of Michael D. Grahn and Michael D. Crahn, for Plaintiff and Appellant.

Law Office of Michael J. Coppess and Michael J. Coppess, for Defendant and Respondent.

_____

Plaintiff William Swearinger appeals from the judgment entered in favor of defendant Edward Paul Humenik following a court trial on a cause of action for account stated. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

William Swearinger is the son of Patricia Swearinger. Edward Humenik is the son of Paul Humenik. Paul began dating Patricia in 1997 or 1998 and moved into her home in 2004 or 2005.[1] Over a 12 year period, Paul wrote 113 personal checks to Patricia, which she never cashed. The checks totaled $41,178.15 and were written in amounts ranging from $40.00 to $1,200.00. Paul died on March 8, 2011.

1. *The Pleadings*

On July 21, 2011, Patricia, represented by her son, William, filed a verified complaint for money. Patricia died on January 27, 2012. On June 18, 2012, William filed a first amended complaint, as Administrator of the Estate of Patricia Swearinger, against Edward, as successor of the Paul Humenik Trust.[2] The complaint asserted a cause of action for account stated, alleging that Paul had become indebted to Patricia prior to his death. The complaint sought a balance due of $41,178.15 plus interest and attorney's fees.

2. *The Trial*

The action was tried to the court. William testified that his mother Patricia gave him 113 checks after Paul died. The checks were made payable to Patricia, were drawn on Paul's bank account and bore Paul's signature. The earliest check was dated

---

[1]    Because some of the parties "share the same last name, we refer to them by their first names for convenience and clarity" (*Jones v. ConocoPhillips Co.* (2011) 198 Cal.App.4th 1187, 1191, fn. 1) and "not out of disrespect." (*Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 188, fn. 13.)

[2]    The complaint also alleged that Edward, individually, had received money from the Paul Humenik Trust and was thus personally liable for Paul's debts under Probate Code section 19400.

May 14, 1999 and the latest check was dated February 23, 2011. Examining copies of some of the checks in court,[3] William testified at length concerning the handwritten notes on the memo line of each check. The notes referred either to Paul's personal expenses or to his portion of expenses he shared with Patricia.[4]

William testified his mother informed him the checks had not been deposited; they were I.O.U's for the debts Paul owed her for the referenced expenses. William recorded the 113 checks on a spreadsheet and determined the total balance due by adding up the checks. Patricia reviewed the spreadsheet and confirmed that the accounting was accurate. In response to questions by the court, William testified Patricia never told him about Paul's debt or the checks either "during the time these check were written" or before Paul died.

At the conclusion of William's presentation of evidence, Edward moved for nonsuit as Successor Trustee of the Paul Humenik Trust.[5] In partially granting the motion, the trial court found there was no account stated as to the sum of $41,178.15 because there was no evidence that Paul and Patricia had agreed upon a balance due in that amount. The court found instead the 113 checks reflected individual debts, each one indicating the agreed upon balance due and owing as an account stated.

---

[3]     After copies of the checks were made, the originals were stolen from William's safe during a burglary of his law office. Eduardo Gutierrez, a plaintiff's witness, testified that he had scanned the original checks and had placed them in the office safe before the burglary occurred.

[4]     For example, William testified that on check number 1666, dated May 14, 1999 and written in the amount of $500.00, the memo line read: "Paul's tax prep," in Paul's handwriting; and that on check number 2056, dated January 15, 2000, the memo line read, "Thank you, November of '99 Mexico Trip" in Paul's handwriting. Counsel did not ask William for what amount check number 2056 was written. William also testified that Paul had experienced income tax problems around the middle of 1999 and that the three of them had vacationed together in Mexico in late 1999.

[5]     Edward also moved for nonsuit in his individual capacity, and the trial court granted the motion.

Relying on section 337, subdivision 2, the court determined William's action to recover on checks dated more than four years prior to the filing of the initial complaint on July 21, 2011 was time barred.[6] Of the 113 checks, 11 of them, totaling $3,409.45, fell within the applicable four-year period.[7]

Edward testified that after his father died, Patricia said Paul did not have much, but he did not owe anything. On cross-examination, Edward testified he did not include Patricia's remark in his answers to interrogatories because he did not think of it at the time.

3. *Trial Court's Findings and Judgment*

Following argument by counsel, the trial court found each of the 11 checks not time barred reflected an agreed-upon balance due as an individual account stated. The court found for William and against Edward in the amount of $3,409.45 and entered judgment on June 12, 2014. William appealed.

## DISCUSSION

William makes two contentions on appeal. First, he argues the trial court erred in failing to find $41,178.15 was the agreed-upon balance due from Paul to Patricia. According to William, in finding Paul and Patricia had expressly agreed that each of the 113 checks reflected a debt he owed her, the court should also have found they had impliedly agreed that the sum of the checks reflected the aggregate debt he owed her. Additionally, William maintains the court's failure to find an implied agreement was an error of law, because the court wrongly believed the agreed-upon balance for an account

---

[6] Section 337, subdivision 2 provides in part, "Within four years: . . . [¶] An action to recover . . . upon an account stated based upon an account in writing, but the acknowledgment of the account stated need not be in writing . . . provided, however, that where an account stated is based upon one item, the time shall begin to run from the date of said item, and where an account stated is based upon an account of more than one item, the time shall begin to run from the date of the last item."

[7] On appeal, William does not challenge the court's ruling on the statute of limitations.

4

stated must always be reduced to writing. William urges us to apply the de novo or independent standard of review in this case in light of the court's legal error. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384.)

However, William's arguments challenge the sufficiency of the evidence. The trial court did not grant a nonsuit on the ground the purported balance due of $41,178.15 had not been reduced to writing, but instead found that William had failed to prove there was any agreement between Paul and Patricia establishing a debt in that amount. This is a factual issue.

### 1. *Standard of Review*

Where, as here, the trier of fact has concluded the party with the burden of proof did not carry the burden and that party appeals, "'it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment. . . . [¶] Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord, *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

### 2. *William Failed to Establish The Account Stated He Alleged*

In general, the necessary elements to prove a cause of action for account stated are: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; [and] (3) the promise by the debtor, express or implied to pay the amount due." (*Zinn v. Fred R. Bright Co*. (1969) 271 Cal.App.2d 597, 600; accord *Trafton v. Youngblood* (1968) 69 Cal.2d 17, 25; *Maggio, Inc. v. Neal* (1987) 196 Cal.App.3d 745, 753.) The agreement need not cover all the dealings or claims between the parties; there may be a partial settlement and account stated as to some of the

5

transactions.  (*California Milling Corp. v. White* (1964) 229 Cal.App.2d 469, 477.)  "The key element in every context is agreement on the final balance due."  (*Maggio, Inc., supra,* 196 Cal.App.3d at p. 753.)  The agreed-upon balance for an account stated need not be in writing (*Truestone, Inc. v. Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, 726), unless, by its nature, it is governed by the statute of frauds.  (See Civ. Code, § 1624.)

The trial court concluded that the evidence did not support the elements of a cause of action for account stated.  We agree.  Nothing in the record suggests Paul and Patricia had agreed that the debt he owed her was the total value of the 113 checks and that this sum equaled $41,178.15.  Indeed, William presented no evidence to establish the key element of an account stated, that Patricia and Paul had struck an agreement as to a final balance due.  According to William, the only witness to testify about the disputed debt, his mother never mentioned either the checks or the debt before Paul died.  Patricia's expressed understanding or desire concerning the accumulated checks does not demonstrate that Paul knew he was indebted to Patricia for the lump sum of $41,178.15 and was aware she was maintaining an account based upon the uncashed checks.

William's additional argument that an implied agreement between Paul and Patricia as to a final balance due can be inferred from their close relationship is purely speculative; he presented no evidence to support that theory.  (See *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1124 [judgment of nonsuit not reversed if plaintiff's proof raises nothing more than mere speculation, suspicion or conjecture].)

The trial court did not err.  The evidence presented did not compel a finding in favor of William as a matter of law.

## DISPOSITION

The judgment is affirmed.  Respondent is to recover his costs on appeal.


ZELON, J.


We concur:


PERLUSS, P. J.


BLUMENFELD, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7