Filed 8/18/23  American Express National Bank RY v. Yang CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| AMERICAN EXPRESS NATIONAL BANK RY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JENNIFER YANG,<br><br>    Defendant and Appellant. | H050133<br>(Santa Clara County<br> Super. Ct. No. 20CV372256) |

This appeal arises out of a credit card debt collection action involving a corporate credit card.  Representing herself, Jennifer Yang (Yang) appeals from the judgment in this action for an account stated.  After a bench trial, the trial court entered judgment in favor of American Express National Bank RY (American Express) and against Yang in the amount of $39,381.92, plus court costs.

On appeal, Yang contends the trial court abused its discretion by denying her motion to continue the trial.  Yang also challenges the judgment on a ground not previously asserted at trial.  She contends there is insufficient evidence to support the elements of a cause of action for an account stated and argues for the application of the "least sophisticated debtor" standard.

We conclude that Yang has not met her burden on appeal to establish reversible error and affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

Yang and others held a corporate credit card with American Express. In October 2020, American Express filed this action against Yang and other unnamed "Doe" defendants to recover an alleged past-due balance of $39,385.88 on a credit card account number ending in 61008. The complaint asserted a single cause of action for an account stated. It alleged that Yang opened and used the account, became indebted in the amount of $39,385.88 "on an account stated in writing" between Yang and American Express, that regular monthly statements were sent to Yang listing the debits, credits, and balance due, and that American Express "has no record of [Yang] timely objecting to the statements after receipt."

Yang, who also represented herself in the trial court, generally denied the allegations (though the answer is not in the record on appeal). On September 14 and October 25, 2021, she propounded discovery requests that she served by mail, sending the requests sequentially to two different addresses listed on American Express's pleadings and case management statement. The discovery requests included interrogatories and requests for admission that Yang "in multiple telephone calls with Plaintiff disputed the alleged unpaid principal balance of $39,385.88" and further "has never agreed that she owes Plaintiff" the alleged balance. The discovery requests also sought the production of electronically stored information, specifically recordings of telephone calls between Yang and American Express related to the account.

After Yang did not receive a response to her discovery requests within the statutory time frame (see Code Civ. Proc., § 2033.250), she contacted counsel for American Express, who informed her they had not received any discovery requests, asked

2

that she forward another copy, and agreed to service by e-mail. On January 14, 2022,[1] Yang served the discovery requests by e-mail. Counsel for American Express asked Yang for an extension of time to March 4 because she was still waiting on documents from her client. On March 15, counsel for American Express notified Yang that she had received her client's signed verification and would "overnight" the box of discovery responses to her, including "at least 1000 page[s] of statements."

Yang asserts she did not receive the package. On March 28, Yang filed a motion to compel responses and for an order to deem admitted the requests for admission (hereafter, motion to compel). The motion to compel was set for hearing on June 21. Counsel for American Express subsequently sent Yang copies of delivery information for the UPS package containing the discovery responses. The address label misspelled Yang's name (addressed to "Jennifer Ynag"), and delivery information indicated an unsuccessful delivery attempt after which the package was held at a UPS pickup point and later received on April 4 in San Jose by a "CD Anthony." (Some capitalization omitted.) The record on appeal contains no information about why Yang did not retrieve the package from UPS or about the identity of the person who received it.

On April 12, Yang received an e-mail from counsel for American Express with a link to its trial brief, proposed judgment, and exhibit list. She received an "amended witness list" a few days later.

The trial court held a bench trial on April 18. There was no court reporter present. In the record on appeal, the trial is documented by the clerk's minute order from that day and by a settled statement later prepared at Yang's request.[2] (Cal. Rules of Court, rule

---

[1] Unless otherwise indicated, all dates were in 2022.

[2] On June 27, Yang requested and submitted a proposed settled statement, and American Express countered on September 30 with proposed changes. After a hearing on the contested settled statement, the trial court issued an order on November 7 finding that all of American Express's proposed changes to Yang's proposed settled statement were "appropriate and should be made." The trial court ordered Yang to incorporate

8.137(a) ["A settled statement is a summary of the superior court proceedings approved by the superior court."].)

At trial, Yang presented an ex parte request for continuance that requested the trial be continued from April 18 to November 21, or for 210 days. The stated grounds for the request were that she had an "excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts" and a "significant, unanticipated change in the status of the case as a result of which the case is not ready for trial." After hearing from both sides on the continuance and related motion to compel, the trial court denied Yang's continuance request as untimely and proceeded to trial.

Rebecca Muldoon testified as custodian of records for American Express. Muldoon identified and authenticated three exhibits (the card member agreement, account statements showing use and payments, and the account statement showing the charge-off balance), which the trial court admitted into evidence without objection.

Muldoon testified that the card member agreement sent to the consumer did not require signatures. According to Muldoon's review of the account, American Express did not receive any disputes from Yang about her balance, and no settlement agreement was ever reached with Yang. Yang testified that she "vigorously disputed the corporate card charges over many lengthy phone calls with American Express because of a late charge increase in interest based on dubious circumstances." Yang further testified that the discovery requests "were so important because they would establish that she never agreed to pay the amount claimed" by American Express.

_____

those changes and file an amended settled statement. Although Yang filed an amended settled statement, the trial court found in a December 12 order that Yang's settled statement did not comply with the court's prior order on settled statement. The trial court consequently ordered the settled statement on appeal to contain the substantive content from both parties' proposed settled statements. (Cal. Rules of Court, rule 8.137(g)(1).)

On January 3, 2023, Yang filed an amended settled statement containing both parties' summary of testimony and evidence. We refer to this January 3, 2023 amended settled statement as the "settled statement."

4

When the trial judge questioned Yang, she stated that she was unsure if she was disputing the debt because she did not have time to go through the statements. Muldoon testified that American Express had provided the statements to Yang and that Yang had online access to all the account statements.

After the conclusion of testimony, the trial court entered judgment in favor of American Express on the cause of action for account stated, finding Yang owed damages of $39,381.92 in principal and $536.40 in court costs, for a total of $39,918.32. Yang timely appealed.

## II.  DISCUSSION

Yang asserts that this case "exemplifies the need for California's courts to clarify the law and to prohibit debt collectors from exploiting pro se defendants lack of legal knowledge in their collection practices." However, the issues before us are narrow in scope. They are (1) whether the trial court abused its discretion by denying the requested continuance despite the outstanding discovery motion, and (2) whether the judgment on an account stated must be reversed based on the "least sophisticated debtor" standard and/or for lack of substantial evidence that Yang assented to pay a final amount due.

*A.  Request for Continuance*

Yang contends that the trial court abused its discretion in refusing her request for a continuance of the trial where that refusal had the practical effect of depriving her of a full or fair trial.

The decision to grant or deny a continuance lies within the discretion of the trial court. (*Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395.) A party seeking to obtain a continuance of a trial date must make an affirmative showing of good cause for a continuance. (Cal. Rules of Court, rule 3.1332(c).) Circumstances that may constitute good cause for a continuance include "[a] party's excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts." (*Id.*, rule 3.1332(c)(6).) However, the trial court must also consider factors like the proximity

5

of the trial date and the availability of alternative means to address the problem that gave rise to the motion for a continuance. (*Id*., rule 3.1332(d).)

The party requesting a continuance, whether by noticed motion or ex parte application, must do so according to court rules and "as soon as reasonably practical once the necessity for the continuance is discovered." (Cal. Rules of Court, rule 3.1332(b).) Under the abuse of discretion standard, "[r]eviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 (*Falcone*).) We review the trial court's denial of Yang's motion for continuance for abuse of discretion. (*Ibid*.; *Desaigoudar v. Meyercord* (2003) 108 Cal.App.4th 173, 190.)

Yang argues that she met the good cause standard for obtaining a continuance based on considerations of necessity, her diligence in proceeding with the case and propounding discovery, and what she asserts to be significant prejudice—absent the continuance—to her ability to present a defense to the claims. Yang cites cases including *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163 (*Hoffmeister*), *Cadle Co. v. WorldWide Hospitality Furniture* (2006) 144 Cal.App.4th 504 (*Cadle Co.*), *In re Dolly A.* (1986) 177 Cal.App.3d 195 (*Dolly*), and *Cohen v. Herbert* (1960) 186 Cal.App.2d 488 (*Cohen*) as support for her contention that the trial court erred in denying her request because the effect was to deprive her of a full and fair opportunity to present her defense.

Yang further asserts that as a self-represented litigant, she "did the best that she could to prepare her case" and that to uphold the trial court's order "would leave those unable to afford legal representation at the mercy of sharp legal practice." She argues that continuing the trial date would have caused no prejudice to American Express, while the denial of a continuance did prejudice her ability to prepare for and present her defense at trial.

We recognize the challenges faced by civil defendants like Yang who are unable to retain counsel. "[P]ro per litigants often do not have an attorney's level of knowledge

6

about the legal system and are more prone to misunderstanding the court's requirements." (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1284 (*Gamet*).) Yet, Yang's self-represented status does not exempt her from the applicable procedural rules governing continuances. A self-represented party " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]' [Citation.] Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure." (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) The California Supreme Court reiterated this point in *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, stating that "we make clear that mere self-representation is not a ground for exceptionally lenient treatment. Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation." (*Id*. at pp. 984–985.) On balance, although "self-represented litigants are not entitled to special exemptions from California's procedural rules, . . . they are 'entitled to treatment equal to that of a represented party.' " (*Nuño v. California State University, Bakersfield* (2020) 47 Cal.App.5th 799, 802–803 (*Nuño*), quoting *Gamet* at p. 1284.)

Considering these principles, the procedural rules governing a trial court's decision whether to grant a continuance, and the deferential abuse of discretion standard of review, Yang has not shown the trial court erred in denying her request. Continuance motions are governed by procedural rules. The California Rules of Court state that "the dates assigned for a trial are firm" and "[a]ll parties and their counsel must regard the date set for trial as certain." (Cal. Rules of Court, rule 3.1332(a).) Only upon "an affirmative showing of good cause" may the court grant a continuance. (*Id*., rule 3.1332(c).)

In her declaration in support of her request for continuance, Yang stated that American Express had failed to provide her its discovery responses or any electronic discovery, that she never received notice of an attempted delivery of the UPS package

containing the discovery responses, and that counsel for American Express did not notify her that a package was waiting for her to pick up until March 31, at which point she claimed it was "too late to pick up," even assuming she could have done so because her identification did not match the recipient on the UPS label. Yang further asserted that her "primary defense to this action for account stated is that no agreement was reached on the amount claimed by [American Express] because [she] disputed the billing statements vigorously in multiple telephone conversations and [] denied both liability and the amount alleged to be owed."

The record shows that Yang acted diligently in her efforts to propound discovery, including bringing her motion to compel. The obstacles Yang encountered in obtaining responses to her discovery requests could arguably constitute good cause for a continuance, if the trial court were to find that Yang had an "excused inability to obtain essential testimony, documents, or other material evidence despite diligent efforts." (Cal. Rules of Court, rule 3.1332(c)(6).) However, there are no such findings in the record of the trial court's minute order on the request for continuance, or in the settled statement.

To the contrary, the trial court found that Yang's request for continuance was untimely. This determination is supported by the record, which shows that Yang filed her motion to compel on March 28, stating she had not received discovery responses, but did not take any action regarding the trial date until April 18, the date of the trial. Further, Yang was served on April 12 with American Express's trial brief and related documents.

Yang's declaration in support of her continuance request stated that she "did not think the trial would proceed before the discovery issues had been resolved" because she could not adequately prepare for trial without the telephone recordings and requests for admission she had propounded. She only became aware the trial would proceed upon receiving the trial brief on April 12 and at that point had "no choice" but to apply ex parte to continue the trial date. Nevertheless, Yang failed to timely request a continuance, as required by the court rules. (Cal. Rules of Court, rule 3.1332(b) [requiring the party

8

requesting a continuance to do so "as soon as reasonably practical once the necessity for the continuance is discovered"].)  These rules furthermore required Yang to give notice of the impending ex parte application to the opposing side "no later than 10:00 a.m. the court day before the ex parte appearance" (*id*., rule 3.1203(a)), or to explain the exceptional circumstances justifying the shorter notice (*id*., rule 3.1204(c)).  The record reflects no such notice to American Express prior to Yang's oral presentation of her continuance request at trial, and no explanation of any exceptional circumstances justifying the lack of notice.

Because self-represented litigants must follow the same procedural rules applicable to all parties, and there is no evidence here that Yang was misdirected or misled regarding her duty to be ready to proceed with trial on the date set (cf. *Gamet*, *supra*, 91 Cal.App.4th at pp. 1283–1284), we perceive no abuse of discretion in the trial court's determination that Yang's ex parte request for continuance on the date of the trial and without notice to the other side was untimely.  (*Nuño*, *supra*, 47 Cal.App.5th at p. 808 [" 'An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.' "].)

The cases Yang cites do not alter this conclusion.  For example, in *Hoffmeister*, the appellant seeking the continuance had received the other party's amended financial statement only a few days before the date set for hearing, and the appellate court held that the denial of a continuance erroneously deprived the appellant of "an adequate opportunity to contest new claims advanced . . . at virtually the last moment." (*Hoffmeister*, *supra*, 161 Cal.App.3d at p. 1170.)  Here, by contrast, Yang had ample notice of the impending trial to explore her options for a continuance, and at a minimum was aware that the trial was scheduled to go forward (notwithstanding the outstanding discovery motion) with enough time to provide American Express with notice of her intent to seek ex parte relief from the trial date.

9

*Cadle Co.* does not provide support for Yang and is largely inapt, as it centers on a corporate defendant's lack of capacity to defend itself in an action due to its suspended status. (*Cadle Co.*, *supra*, 144 Cal.App.4th at pp. 512–515.) So too in *Dolly*, the appellate court's determination that the juvenile court abused its discretion in refusing to grant the continuance rested on facts bearing no resemblance to the circumstances presented here. (*Dolly*, *supra*, 177 Cal.App.3d at p. 201.) Finally, in reversing the trial court's denial of a continuance of the motion hearing on an order to appoint a receiver in *Cohen*, the appellate court referred to case law directing courts to "grant reasonable time to parties" to address the issues unique to receiverships and noted the defendants had been diligent in pursuing their opposition. (*Cohen*, *supra*, 186 Cal.App.2d at p. 495.) No such special considerations exist here. Despite her diligence in pursuing responses to her discovery requests, Yang did not exercise diligence in bringing the continuance request prior to the date set for trial.

On the record before us, we decide the trial court did not abuse its discretion in denying Yang's last-minute continuance request.

## B. *Judgment on an Account Stated*

The trial court found Yang liable under American Express's theory of an account stated for $39,381.92 in principal and $536.40 in court costs, for a total of $39,918.32. Yang asserts the trial court erred in reaching this decision because the evidence did not establish the required element that there was agreement as to a final sum due. Yang moreover challenges the court's decision on the independent ground that an account stated cannot form the basis of an action to collect credit card debt because a "least sophisticated debtor" "could not knowingly assent to an account stated and the implications thereof." (Capitalization omitted.)

We begin with the latter contention, first setting out the standard of review and elements of an account stated.

1. Standard of Review

Insofar as Yang challenges the sufficiency of the evidence to support the trial court's ruling, as well as the court's application (or nonapplication) of legal principles such as those governing the "least sophisticated debtor" standard, the appeal presents questions of both law and fact. In such cases, our Supreme Court has explained the standards of appellate review as follows: " 'Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. . . . If, . . . the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384 (*Haworth*); see also *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801.)

We must also bear in mind the fundamental principle of appellate review "that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*); see also Cal. Const., art. VI, § 13.) As the appellant, Yang has the burden of demonstrating that the trial court committed reversible error. She must make this showing based on the record presented on appeal. (*Jameson*, at p. 609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see also *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) This task is rendered more difficult because Yang is proceeding without a reporter's transcript of the trial court proceedings. The absence of a complete record of the trial court proceedings hampers Yang's ability to demonstrate error, because " '[i]n the absence of a contrary showing in

the record, all presumptions in favor of the trial court's action will be made by the appellate court.' " (*Jameson*, at p. 609.)

2. Elements of An Account Stated

"An account stated is an agreement, based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing." (*Maggio, Inc. v. Neal* (1987) 196 Cal.App.3d 745, 752 (*Maggio*); accord *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 968 (*Lauron*).) The elements that comprise an account stated are: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." (*Zinn v. Fred R. Bright Co.* (1969) 271 Cal.App.2d 597, 600; *Maggio*, at pp. 752–753; see also California Civil Jury Instructions (CACI) No. 373.)

An account stated may arise in a variety of commercial situations, from open book accounts to acknowledgment of debt consisting of a single item. "The key element in every context is agreement on the final balance due." (*Maggio*, *supra*, 196 Cal.App.3d at p. 753.) That agreement "need not be express and is frequently implied from the circumstances." (*Ibid*.; *Lauron*, *supra*, 8 Cal.App.5th at p. 968 [" '[A]n element essential to render the account stated is that it receive the assent of both parties, but the assent of the party sought to be charged may be implied from his conduct."].) For example, "[w]hen a statement is rendered to a debtor and no reply is made in a reasonable time, the law implies an agreement that the account is correct as rendered." (*Maggio*, at p. 753.)

A panel of this court previously observed that other jurisdictions "have applied this principle in the context of credit card debt, concluding that where a debtor receives and does not object to a credit card statement, an agreement to the amount due can be inferred." (*Lauron*, *supra*, 8 Cal.App.5th at p. 968.)

12

### 3. "Least Sophisticated Debtor" Standard

Yang argues that the "least sophisticated debtor" standard applicable under laws that protect debtors from deceptive and abusive debt collection practices (like the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) and California's Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.)) should also apply to a creditor's effort to collect debt through an action for an account stated. Yang asserts that "[i]n the context of credit card debt, a least sophisticated debtor would not understand a regular received monthly billing statement was to be the last and final rendering of their account."

There is no indication in the record Yang raised this "least sophisticated debtor" argument in the trial court. American Express contends she did not, and Yang implicitly admits as much in her reply brief. We decline to consider Yang's contention that this standard applies here, because the trial court had no occasion to consider it when it conducted the bench trial in this action.

Generally, "[a]ppellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.) This principle, founded on fairness, seeks to avoid inefficient "[b]ait and switch" tactics on appeal and prevent courts from retrying cases on theories that could have been raised earlier. (*Ibid.*)

The circumstances here are particularly inapt for excusing Yang's failure to raise this argument prior to or during trial. Yang does not merely seek the implementation of a legal principle divorced from the facts of the case. Rather, she seeks to interpret the monthly statements presented at trial (which are not in the record on appeal, and which we have no occasion to review here) in accordance with the protective "least sophisticated debtor" standard. Given the necessarily factual context for evaluating whether a "least sophisticated debtor" would be misled by the communications at issue,

13

we conclude that any argument for application of the standard to the circumstances here has been forfeited.

### 4. Substantial Evidence of Assent and Finality

Even absent application of the "least sophisticated debtor" standard, we understand Yang's appeal to challenge the sufficiency of the evidence supporting the trial court's determination that American Express proved its claim for an account stated. Yang contends that this case "raises the question as to whether a monthly credit card billing statement is sufficiently 'final' such that a debtor can knowingly agree to the sum due." More specifically, Yang argues that although the trial court "implicitly found" that the June 2020 statement sent to her was a " 'final' " rendering of the account, that finding was error because: "(1) the allegedly 'final' billing statement dated June 2020 is indistinguishable from any of the previous billing statements and (2) [American Express]'s decision to treat the June 2020 statement as final was not consistent with the terms of the original credit card agreement or [American Express]' prior actions."

We review the trial court's factual findings for substantial evidence. (*Haworth*, *supra*, 50 Cal.4th at p. 384.) Under the substantial evidence standard of review, we must consider the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the findings. (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266 (*ASP Properties*).) We do not weigh conflicts and disputes in the evidence but determine only " 'whether, on the entire record, there is any substantial evidence, contradicted or uncontradicted, in support of the judgment.' " (*Ibid*.)

In support of her argument that the trial court erred in construing the June 2020 credit card statement as a final billing statement, Yang cites *American Fruit Growers of California v. Jackson* (1928) 203 Cal. 748, 751 for the proposition that an account rendered lacks the necessary element of finality where the parties have continued to transact business and statements periodically sent reflect those continuing affairs. The

14

defendant in *American Fruit* was a farmer (Osborne) who became indebted to the plaintiff American Fruit Growers (AFG) in relation to a lease of farm equipment and AFG's advance of funds for crops. (*Id*. at p. 749.) The theory of account stated was based on quarterly statements sent by AFG to Osborne which reflected the debit balance. (*Id*. at pp. 750–751.) The California Supreme Court rejected the sufficiency of the statements to render an account stated. The high court explained, "There is in the case before us no element of finality, as the parties were still transacting business. These statements were sent periodically and business was continued between them as before. There is no ground whatever for the contention that the account was rendered and intended to be an account stated, or that said Osborne, either expressly or impliedly, considered that it was such." (*Id*. at pp. 751–752.)

Yang contends that like the periodic statements in *American Fruit*, the monthly billing statements submitted in support of the alleged account stated merely reflected a continuing relationship and ongoing billing cycle. She asserts that the trial court implicitly based its finding that the June 2020 statement was " 'final' " on the " '[s]tatement [c]losing [d]ate,' " even though each of the billing statements from the credit card account contained the same " '[s]tatement [c]losing [d]ate" language. However, without record support, Yang's assertions concerning the contents of the billing statements and whether the evidence supplied the necessary element of assent to a final amount due are insufficient to meet her burden on appeal "to affirmatively demonstrate error on the record before the court." (*Falcone*, *supra*, 164 Cal.App.4th at p. 822; *Jameson*, *supra*, 5 Cal.5th at p. 609.)

Considering the evidence in the light most favorable to American Express and resolving conflicts in support of the judgment (*ASP Properties*, *supra*, 133 Cal.App.4th at p. 1266), we are unable to perceive any deficiency in the record supporting the trial court's finding that American Express satisfied all the elements of the cause of action for an account stated.

15

As noted in the trial court's minute order and in the settled statement, the documents admitted at trial included the terms and conditions of the account (stating the cardmember promises to pay all charges), the monthly credit card account statements, and the final account statement showing the charge-off balance. This documentary evidence, coupled with the testimony of Muldoon confirming the authenticity of American Express's records under the business records exception to the hearsay rule, as well as Yang's access to the credit card account online during its lifetime and the absence of any record of Yang having disputed the charges, demonstrate that Yang entered into a cardmember agreement to pay, accrued a debt as documented in the monthly statements, and that a balance was "due and owing" at charge-off. Although Yang maintains she disputed the charges, " '[i]t is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact.' " (*ASP Properties*, *supra*, 13 Cal.App.4th at p. 1266.)

Based on the record provided, Yang is unable to demonstrate that the evidence was insufficient to prove that, together, the card member agreement and final charge-off statement rendered an account stated between the parties. Furthermore, under *Maggio*, the trial court did not err in its implicit finding that Yang's failure to dispute the final account statement within a reasonable time implies agreement that the account rendered was correct. (*Maggio*, *supra*, 196 Cal.App.3d at p. 753.)

## III. DISPOSITION

The judgment is affirmed. In the interests of justice, each party is to bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
                       Danner, J.

WE CONCUR:

_____
Greenwood, P.J.

_____
Wilson, J.

**H050133**
*American Express National Bank RY v. Yang*