Filed 12/18/25  Gutierrez v. ACSC Management Services CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| BLANCA GUTIERREZ, et al., | B321079 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 19STCV44116) |
| v. | |
| ACSC MANAGEMENT SERVICES, INC., et al., | |
| Defendants and Respondents; | |
| VICTOR ESTRADA, | |
| Appellant; | |
| JONATHAN TERCERO, | |
| Appellant. | |

APPEALS from judgment of the Superior Court of the County of Los Angeles, Teresa A. Beaudet, Judge. Appeals dismissed.

Becerra Law Firm and Joseph R. Becerra; Gleason & Favarote, Torey J. Favarote and David H. Danning for Appellant Victor Estrada.

Law Offices of Todd M. Friedman, Todd M. Friedman and Adrian R. Bacon for Appellant Jonathan Tercero.

David Yeremian & Associates, David Yeremian; D. Law, Emil Davtyan and Natalie Haritoonian; Law Offices of Sahag Majarian II, Sahag Majarian II; Law Office of Neal J. Fialkow, Neal J. Fialkow for Plaintiffs and Respondents Blanca Gutierrez and George Lawson.

CDF Labor Law, Timothy M. Freudenberger, Ashley A. Halberda, and Brian E. Cole II for Defendants and Respondents ACSC Management Services, Inc., Auto Club Enterprises, and Automobile Club of Southern California.

———————————————

The Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) allows aggrieved employees, acting as the agent of the state's labor enforcement agencies, to bring an action against their employers to recover civil penalties for violations of the Labor Code.[1] Overlapping PAGA actions are sometimes simultaneously prosecuted by different employees who allege the same violations and use the same theories. This appeal involves three such actions.

_____

[1] Undesignated statutory references in this opinion are to the Labor Code.

Respondents Blanca Gutierrez and George Lawson (the *Gutierrez* plaintiffs) prosecuted the underlying PAGA action against respondents ACSC Management Services, Inc. (ACSC), Auto Club Enterprises (Enterprises), and Automobile Club of Southern California (AC So. Cal.) (the Auto Club defendants). Simultaneously, appellants Victor Estrada and Jonathan Tercero were each prosecuting their own PAGA actions against AC So. Cal.

The *Gutierrez* parties settled, and their agreement included a release that encompassed appellants' PAGA claims against AC So. Cal. The state agency charged with oversight and review of PAGA settlements received multiple notices detailing the alleged PAGA violations and copies of the settlement and judgment. It declined to involve itself in the case or object to the settlement. The trial court approved the settlement and entered judgment. The state agency cashed the settlement check.

Seeking to unwind the settlement, appellants Estrada and Tercero both moved to intervene in the *Gutierrez* action, and Tercero moved to vacate the judgment and settlement approval order. The trial court denied these motions. Estrada appeals from the order denying his motion to intervene, and Tercero appeals only from the order denying his motion to vacate. Appellants lacked standing to make these motions and to appeal, and accordingly, we dismiss the appeals.

**FACTUAL AND PROCEDURAL BACKGROUND**
**A.    The *Gutierrez* Action**

In October 2019, Gutierrez submitted a written notice to the California Labor and Workforce Development Agency ("LWDA") stating her intent to bring a PAGA action against

3

ACSC and Enterprises on behalf of herself and other aggrieved employees. She described alleged violations of the Labor Code that included the defendants' failure to pay minimum wages, to pay wages and overtime, to provide lawful meal and rest breaks, to provide accurate itemized wage statements, and to timely pay final wages upon termination or separation. The LWDA did not express its intent to prosecute the action.

In December 2019, Gutierrez submitted a first amended PAGA notice to the LWDA. She filed her initial complaint against ACSC and Enterprises alleging causes of action for (1) failure to pay minimum wages (§§ 1194, 1197); (2) failure to pay wages and overtime (§ 510); (3) meal period liability (§§ 226.7, 512); (4) rest break liability (§ 226.7); (5) failure to furnish accurate itemized wage statements and keep accurate payroll records (§§ 226, subd. (a), 1174); (6) failure to timely pay final wages upon termination or separation (§§ 201, 202, 203, and 204) and (7) failure to pay reporting time pay. A first amended complaint was filed in October 2020.

Gutierrez filed a second amended PAGA notice with the LWDA in September 2021. This notice alleged that she and the aggrieved employees "were jointly employed by" three entities— ACSC, Enterprises, and AC So. Cal.

### B. Settlement of the *Gutierrez* Action, Court Approval, and Entry of Judgment

Gutierrez, Lawson, and the Auto Club defendants reached a settlement in October 2021 following mediation before a private neutral. The agreement was conditioned on court approval. Their agreement defined "'Aggrieved Employees'" as all non-exempt and/or hourly employees in California (1) who worked for

4

the Auto Club defendants for any portion of the time period between February 18, 2018 and court approval of the settlement; and/or (2) who worked an on-call shift within one or more pay periods during the time period between January 1, 2012 and court approval. The settlement terms included a release of the representative PAGA claims that were alleged and could have been alleged in the case and indicated the plaintiffs would be filing a second amended complaint. The Auto Club defendants agreed to pay a total sum of $4.5 million, part of which would be allocated to pay the plaintiffs' attorney fees and costs, settlement administration costs, and enhancement awards to Gutierrez and Lawson. What remained (nearly $3 million) would be allocated between the LWDA (75 percent) and the Aggrieved Employees (25 percent).

The *Guttierez* plaintiffs filed a third amended PAGA notice with the LWDA on October 28, 2021. The notice identified Lawson as a plaintiff, and it described the Auto Club defendants' failure to pay the Aggrieved Employees for time they were required to be "'on call.'"

On December 20, 2021, Gutierrez submitted a copy of the proposed settlement agreement to the LWDA. The same day, she filed a motion requesting, among other relief, that the trial court approve the settlement and deem a proposed second amended complaint filed as of the date of such approval. The motion was supported by a 28-page declaration from Gutierrez's counsel that detailed the case's procedural history, discovery efforts, the settlement negotiations, and the terms of settlement. Counsel represented that the extensive settlement negotiations were conducted at arm's length and in good faith. The declaration described the strength of the plaintiffs' case, the PAGA penalties,

5

and how these were calculated. It also described the attorney fees and costs and how they were calculated, counsel's experience with employment matters and representative and PAGA cases in particular, and the enhancement awards to the representative plaintiffs. Gutierrez's counsel attested that he had received nothing from the LWDA indicating that the agency intended to prosecute the action.

At a hearing in January 2022, the trial court granted the unopposed motion. It approved the settlement agreement, finding it "is, in all respects, fair, adequate, reasonable, and just and is not arbitrary, oppressive or confiscatory . . ." and was "reached as a result of informed and noncollusive arm's-length negotiations." The court also found that the parties had conducted "extensive investigation and research, and their attorneys were able to reasonably evaluate their respective positions," and that "settlement now will avoid additional and potentially substantial litigation costs, as well as delay and risks" if litigation were to continue. Regarding the monetary recovery, the court "recognize[d] the significant value accorded to Plaintiffs and each Aggrieved Employee."

The court also deemed the second amended complaint filed that day. The second amended complaint added Lawson as a representative plaintiff and AC So. Cal. as a defendant. It alleged that the Auto Club defendants "employed or jointly employed the Aggrieved Employees," and it added allegations concerning the defendants' failure to compensate those employees for the time they were required to be "'on-call'" for 24-hour periods.

On January 11, 2022, the trial court entered judgment. A copy of the judgment was submitted to the LWDA on February 11, 2022.

In early February 2022, the Auto Club defendants delivered a $2,213,803.16 check to the LWDA, which the LWDA cashed. The LWDA did not communicate any objection to the settlement or judgment, and the register of actions indicates no objection was filed with the court.

## C. Tercero's Motions to Intervene and to Vacate the Judgment

In February 2022, Tercero filed two motions in the *Gutierrez* action: a motion for leave to intervene and file a complaint in intervention and a motion to vacate the judgment. He described himself as the plaintiff in a PAGA action filed in 2019.[2] He stated that the action alleged that AC So. Cal. failed to pay overtime wages and wages owed upon termination, to provide rest breaks and meal periods, to provide accurate wage statements, and to comply with the Healthy Workplace Healthy Families Act (§ 246).

Tercero argued that he had a direct interest justifying intervention because he was pursuing overlapping PAGA claims, and the *Gutierrez* settlement eliminated his individual wage and hour claims and his right to attorney fees. Tercero argued that

---

[2]     *Tercero v. The American Automobile Association, Inc., et al.* (Orange County Superior Court Case No. 30-2019-01052233-CU-OE-CXC).

the settlement was collusive and the product a reverse auction.[3] He asserted his interests were not adequately represented.

In his other motion, Tercero requested that the trial court vacate the judgment pursuant to Code of Civil Procedure, section 663, because it was void. He argued that the motion to approve the settlement was procedurally defective because Gutierrez did not timely provide the LWDA with a copy of the judgment, did not file a notice of related cases disclosing the *Tercero* litigation, and did not comply with the notice requirements that govern motions generally. He argued that the judgment was void because (1) there were problems with the scope of the settlement's release; (2) the settlement was collusive and the product of a reverse auction; (3) the trial court reviewed the settlement agreement under an incorrect legal standard; and (4) the trial court used the wrong test to determine that the plaintiffs' attorneys were entitled to their fee award. Tercero also argued that the judgment was void because the settlement deprived his attorneys of their substantive right to attorney fees and costs.

The trial court denied the motion to vacate. It found Tercero lacked standing to bring the motion, citing *Turrieta v. Lyft, Inc.* (2021) 69 Cal.App.5th 955, 968 (*Turrieta I*),[4] review

---

[3]     A reverse auction is said to occur when the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with, in the hope that the trial court will approve a weak settlement that will preclude other claims against the defendant. (See *Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 544.)

[4]     In *Turietta I*, this division concluded that the appellants, PAGA plaintiffs who desired to challenge the settlement reached in another

granted, Jan. 5, 2022, S271721, affd (2024) 16 Cal.5th 664 (*Turrieta II*).) Even if Tercero had standing, the court found, he failed to show that vacating the judgment and approval order was warranted. Tercero's motion for leave to intervene was denied as moot.

Tercero appealed from only the order denying his motion to vacate the judgment.

## D.     Estrada's Motion to Intervene

On March 11, 2022, Estrada filed a motion in the *Gutierrez* action. Estrada described himself as the plaintiff in a PAGA suit filed in 2013 [5] that alleged AC So. Cal. "was utilizing an unlawful on-call policy whereby [it] required its employees to work 7 day, 24-hour, shifts without compensation . . . ." That case had been heavily litigated and was set for trial in four months. Estrada argued that the *Guttierez* settlement was the result of a reverse auction. He also argued that the *Gutierrez* plaintiffs lacked authority to release PAGA claims related to Estrada because they had not exhausted administrative remedies with respect to the claims asserted in the second amended complaint. Estrada further argued that there was no evidence Gutierrez ever worked for AC So. Cal., and she therefore lacked authority to seek penalties against that entity. Estrada's notice of motion

---

PAGA plaintiff's case, "lacked standing below to bring a motion to set aside the judgment pursuant to Code of Civil Procedure section 663, and lack standing to appeal from the judgment for the same reasons." (*Id.* at p. 970.)

[5]     *Estrada v. Automobile Club of Southern California* (Orange County Superior Court Case No. 30-2013-00637388-CU-WT-CJC).

9

indicated he was seeking to intervene under theories of mandatory and permissive intervention.[6]

Following a hearing, the trial court denied Estrada's motion, finding he lacked standing to intervene under *Turrieta I*. The trial court also found Estrada did not provide any argument to support permissive intervention, did not show that the settlement was unfair, and did not show that the *Gutierrez* plaintiffs were represented by "ineffectual lawyers or that the parties in the instant action entered into a weak settlement."

Estrada appealed from the order denying his motion.

## DISCUSSION

### A. Governing Law

#### 1. *PAGA Overview*

"'California's Labor Code contains a number of provisions designed to protect the health, safety, and compensation of workers. Employers who violate these statutes may be sued by employees for damages or *statutory* penalties. [Citations.] Statutory penalties, including double or treble damages, provide recovery to the plaintiff beyond actual losses incurred. [Citation.] Several Labor Code statutes provide for additional *civil* penalties, generally paid to the state unless otherwise provided. [Citation.] Before PAGA's enactment, only the state could sue for civil

---

[6] Estrada's notice of motion included a request that the court vacate the judgment and its order approving the settlement. However, his motion below and his opening brief on appeal did not analyze or provide argument regarding the controlling statute, Code of Civil Procedure, section 663. Accordingly, his arguments regarding vacatur are forfeited. (*Owens v. County of Los Angeles* (2013) 220 Cal.App.4th 107, 130–131 [argument forfeited where not raised in motion in the trial court or in opening brief on appeal].)

10

penalties.' [Citation.]" (*Turrieta I, supra,* at p. 968.) "The Legislature enacted PAGA in 2003 to allow aggrieved employees to act as private attorneys general and recover civil penalties for Labor Code violations." (*Ibid.*) Its "declared purpose in enacting PAGA was 'to supplement enforcement actions by public agencies, which lack adequate resources to bring all such actions themselves.' [Citation.]" (*Ibid.*)

"PAGA deputizes 'aggrieved' employees to bring a representative lawsuit on behalf of the state to enforce labor laws." (*Turrieta I*, *supra,* at p. 968.) "An 'aggrieved employee' for purposes of bringing a PAGA claim is defined under the statute as 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.'" (*Ibid.*, quoting § 2699, subd. (c).) "Although an aggrieved employee is the named plaintiff in a PAGA action, PAGA disputes are between the state and the employer, not between the employee and the employer." (*Ibid.*) "Thus, an employee suing under PAGA 'does so as the proxy or agent of the state's labor law enforcement agencies. . . . In a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA].' [Citations.]" (*Id.* at pp. 968–969.)

"Before filing a PAGA lawsuit, an employee must provide written notice to the LWDA and the employer of the specific Labor Code violations alleged and facts and theories to support the claims." (*Turrieta I*, *supra,* at p. 969, citing § 2699.3, subd. (a)(1)(A).) "'If the [LWDA] elects not to investigate, or investigates without issuing a citation, the employee may then

bring a PAGA action.' [Citations.]" (*Ibid*; see § 2699.3, subd. (a)(2)(A).)

"Overlapping PAGA actions may be brought by different employees who allege the same violations and use the same theories." (*Turrieta I, supra,* at p. 969.) "However, because an employee who brings an action under PAGA does so as the 'proxy or agent' of the state, a judgment in an employee's action under PAGA 'binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government.' [Citation.]" (*Ibid.*) "[W]hen an employee plaintiff prevails in a PAGA action, '[n]onparty employees may then, by invoking collateral estoppel, use the judgment against the employer to obtain remedies other than civil penalties for the same Labor Code violations.' [Citations.]" (*Ibid.*)

"If the parties settle a PAGA claim, section 2699, subdivision (l)(2) requires the plaintiff employee to simultaneously submit the proposed settlement to the LWDA and the court, and further requires that the court 'review and approve' the settlement. As such, the court must 'ensur[e] that any negotiated resolution is fair to those affected.' [Citation.]" (*Turrieta I, supra,* at p. 969.)

### 2. *Motions to Intervene*

Code of Civil Procedure section 387 allows either mandatory or permissive intervention. (*Turrieta I, supra*, at p. 975.) "A nonparty has a right to mandatory intervention where '[t]he person seeking intervention claims an interest relating to the property or transaction that is the subject of the action and that person is so situated that the disposition of the action may impair or impede that person's ability to protect that

interest, unless that person's interest is adequately represented by one or more of the existing parties.'" (*Id.* at pp. 975–976, quoting Code Civ. Proc., § 387, subd. (d)(1).) "Thus, 'the threshold question is whether the person seeking intervention has "an interest relating to the *property [or] transaction* which is the subject of the action."' [Citations.]" (*Id.* at p. 976.) "Permissive or discretionary intervention under Code of Civil Procedure section 387, subdivision (d)(2) also requires a showing that 'the nonparty has a direct and immediate interest in the action,' among other criteria." (*Ibid.*, citation omitted.)

The Courts of Appeal are split as to the standard of review governing orders denying mandatory intervention. (*Turrieta I, supra,* at p. 976 [acknowledging that some courts review such orders de novo, while others review for abuse of discretion].) The denial of permissive intervention is reviewed for an abuse of discretion. (*Ibid.*)

### 3. *Motions to Vacate Judgments*

"[P]ursuant to Code of Civil Procedure section 663, a 'party aggrieved' may move for a judgment 'to be set aside and vacated . . . and another and different judgment entered, . . . materially affecting the substantial rights of the party and entitling the party to a different judgment.'" (*Turrieta I, supra*, at pp. 970–971.) The motion may be granted for "'[i]ncorrect or erroneous conclusions of law not consistent with or not supported by the findings of fact . . . .'" (Code Civ. Proc., § 663, subd. (1); *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 738.)

A trial court's order denying a motion to vacate a judgment under section 663 is reviewed for an abuse of discretion. (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1207.)

13

**B.    Standing to Appeal, *Turrieta I*, and *Turrieta II***

Before we can address appellants' claims of error, we must resolve the threshold issue of their standing. (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124 [we do not address the merits of litigation when the plaintiff lacks standing].)  Respondents agree with the trial court's determination that appellants lacked standing to move to intervene and vacate the judgment.  They similarly argue that appellants lack standing to bring this appeal.  Gutierrez and Lawson urge us to dismiss the appeals. Applying the de novo standard to assess whether appellants had standing, we agree with the trial court. (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299.)

In their opening briefs, appellants argued that the trial court improperly relied on *Turrieta I* when it decided they lacked standing to intervene and object to the settlement and judgment. In that case, Turrieta filed a PAGA action against Lyft alleging its failure to pay minimum wages, overtime premiums, and business expense reimbursements. (*Turrieta II, supra*, at p. 676.) Olson was pursuing his own PAGA case against Lyft that raised the same violations. (*Ibid.*)  Turrieta settled her case first. (*Ibid.*)  The trial court denied Olson's motion to intervene, approved the settlement, and later denied Olson's motion to vacate the judgment. (*Ibid.*)  This division affirmed. (*Ibid.*)  It was "the state's rights" that were "affected by a parallel PAGA settlement . . . ." (*Turrieta I, supra*, at p. 972.)  Olson could not show "a direct and immediate interest in the settlement, which would establish [his] entitlement to mandatory or permissive intervention" under Code of Civil Procedure, section 387. (*Id.* at p. 977.)  He similarly was not aggrieved by the judgment, as

14

required by Code of Civil Procedure, section 902, and therefore lacked "standing to seek to vacate the judgment or appeal." (*Id.* at p. 972.)

In their opening briefs, appellants argued that *Turrieta I* conflicted with decisions in other districts, was wrongly decided, and would be reversed by the California Supreme Court. "[A]ssuming *Turrieta* is overturned," it was argued, appellants should have been permitted to intervene.

However, after appellants filed their briefs, our Supreme Court affirmed *Turrieta I,* resolving the split among the Courts of Appeal. It held "that an aggrieved employee's status as the State's proxy in a PAGA action does not give that employee the right to seek intervention in the PAGA action of another employee, to move to vacate a judgment entered in the other employee's action, or to *require* a court to receive and consider objections to a proposed settlement of that action." (*Turrieta II, supra,* at p. 716.) Intervention under these circumstances is "outside the scope of [the proxy's] authority to commence and prosecute a PAGA action on the state's behalf" and precludes that proxy from "establish[ing] a cognizable interest to support intervention under Code of Civil Procedure section 387 based on his asserted authority, as the state's proxy or agent, to assert any state right to intervene." (*Id.* at p. 705.)

Our high court also concluded that "[n]othing in PAGA's text, the statutory scheme, or the legislative history suggests the Legislature understood or intended an aggrieved employee's authority to commence and prosecute a PAGA action on the state's behalf to include the power to move to vacate a judgment obtained by another aggrieved employee — representing the same state interest — after a proposed settlement has been

submitted for review to both the trial court and the LWDA, and the court has determined that the proposed settlement 'is fair to those affected.' [Citation.]." (*Turrieta II, supra,* at p. 711.)

In subsequent cases, PAGA plaintiffs have been unsuccessful in limiting the holding in *Turrieta II.* In *Moniz v. Adecco USA, Inc.* (2025) 109 Cal.App.5th 317 (*Moniz*), the appellate court held a PAGA plaintiff does not have standing to intervene or move to vacate judgment in an overlapping suit based upon her private interest arising from the statute. (*Id.* at p. 332.) It reasoned, "[T]he interest at stake in a PAGA action is that of the state, not the employees themselves." (*Id.* at p. 334.) "If a PAGA plaintiff could obtain standing to intervene or move to vacate in an overlapping suit merely by engaging in the semantic exercise of relabeling his or her interest arising from the statute as a private one rather than one as the state's proxy," *Turrieta II*'s holding "would have no effect." (*Id.* at p. 332.) Another case, *Brown v. Dave & Buster's of California, Inc.* (Nov. 19, 2025, B339729) __ Cal.App.5th __ [2025 WL 3228867] (*Brown*), rejected the assertion that a PAGA plaintiff can avoid claim preclusion resulting from the settlement of an overlapping case by arguing the settling plaintiff failed to provide the LWDA with sufficient notice before filing amended claims. (*Brown, supra,* __ Cal.App.5th __ [2025 WL 3228867 p. 5].) It observed, "The Supreme Court has firmly rejected the efforts of PAGA plaintiffs 'to file objections to the settlement reached by another aggrieved employee representing the same state interest and also acting on the state's behalf.'" (*Ibid.*)

16

## C.  Analysis

We granted appellants leave to file supplemental briefs to address *Turrieta II*.  Both appellants point to footnote seven of the opinion in their effort to distinguish the case.  Our Supreme Court noted that Olson, the nonparty seeking to intervene, argued to the Court of Appeal that Turrieta had settled claims she was not deputized to pursue.  However, the Court of Appeal concluded the issue had been forfeited due to Olson's failure to raise it properly before the trial court.  (*Turrieta II*, *supra,* at p. 684, fn. 7.)  The court declined to discuss the argument because it was beyond the scope of the issue identified in its order granting review.  (*Ibid.*)

Appellants argue that *Turrieta II* presumed that Turrieta had been property deputized by the LWDA to pursue and settle claims.  Footnote seven, they argue, leaves open the possibility of standing for a PAGA plaintiff who seeks to unwind another PAGA plaintiff's settlement by arguing the settling plaintiff lacked administrative authority.  Estrada argues the *Gutierrez* plaintiffs were not deputized by the LWDA to act as the state's proxy and release claims against AC So. Cal.  He argues that Gutierrez was not employed by AC So. Cal, and Lawson was not identified as an employee of AC So. Cal during discovery in the *Estrada* case.  Estrada further argues that Lawson did not provide LWDA with sufficient notice before "commencing" his action.

For his part, Tercero argues in his supplemental brief that the *Gutierrez* plaintiffs "lacked standing to have ever agreed to

17

this settlement." However, he does not support his arguments with citations to the record or legal authority.[7]

Appellants fail to persuade us that their motions and this appeal fall outside of *Turrieta II's* holding.

First, *Turrieta II* recognized that the PAGA statute, its amendments, and its legislative history "suggest[] that the Legislature contemplated formal oversight and review of proposed settlements *only* by the LWDA and trial courts." (*Id*. at p. 694, italics added.) The 2016 amendments to PAGA, by which the Legislature expanded judicial settlement oversight, added provisions to facilitate and increase the LWDA's involvement in PAGA litigation, including the settlement process, and provided LWDA with additional funds to perform its oversight responsibilities. (*Id*. at pp. 696–697.) "These actions of the Legislature and the explanatory comments in the legislative history—which contain no mention or suggestion of oversight by anyone else — indicate the Legislature does not share Olson's view that courts are not adequately equipped to '"sniff out bad deals . . . ."'" (*Id*. at p. 697.) Rather, courts are capable of "'assess[ing] [the] fairness' of proposed settlements." (*Ibid*.) Contrary to Olson's assertions, the legislative history does not show "that the LWDA's financial 'resources are inadequate to

---

[7]     At oral argument, Tercero argued *Turrieta II* is not dispositive of this case because it did not decide whether a PAGA plaintiff has standing to object in his individual capacity. As we have discussed, a similar argument was rejected in *Moniz*. *Turrieta II's* "concerns about allowing intervention or vacatur by PAGA plaintiffs in overlapping suits as state proxies apply with the same force when those same individuals seek vacatur based on private interests under the same statute . . . ." (*Moniz, supra,* 109 Cal.App.5th at p. 335.) We conclude Tercero's argument lacks merit.

fully' perform its oversight functions, and that joint oversight by courts and the LWDA is insufficient to fulfill the Legislature's purposes in enacting PAGA." (*Id.* at p. 697.)

Appellants point to nothing in the statute or legislative history indicating that the Legislature intended to treat disputes over the settling plaintiff's administrative authority differently than other nonparty challenges to a PAGA settlement. They do not contend that such disputes present issues that are so complex or difficult that the LWDA and trial courts cannot adequately resolve them as part of their statutory oversight functions. They do not contend they were precluded from offering arguments and evidence informally to aid the LWDA and courts in performing their functions.[8] Thus, we are unconvinced that *Turrieta II* would afford special treatment to administrative authority disputes and confer standing on other PAGA plaintiffs to assert them.

The record in this case indicates that the LWDA and trial court performed their oversight and review functions. The undisputed evidence indicates that the LWDA received multiple PAGA notices and copies of the settlement and judgment. The agency did not object to the settlement or dispute the *Gutierrez* plaintiffs' authority to release claims, though "it had an

---

[8]     Indeed, though it denied intervention, the trial court considered and found unpersuasive Estrada's and Tercero's arguments concerning, e.g., the sufficiency of the discovery that had been taken before settlement, the effectiveness of the *Gutierrez* plaintiffs' counsel, alleged collusion, and the scope of the release. (*Turrieta II, supra*, at p. 706 ["Courts, in evaluating the adequacy and fairness of proposed PAGA settlements, remain free to exercise discretion to consider arguments and evidence informally offered by plaintiffs pursuing overlapping PAGA claims in separate actions"].)

19

opportunity" to do so. (*Brown, supra*, __ Cal.App.5th __ [2025 WL 3228867 p. 5].) Instead, it accepted the settlement amount. The LWDA has not sought to file a brief in this appeal. Appellants offer no reason for us to conclude that they have standing, as proxies for the state, to assert grievances that the state itself elected not to assert.

Appellants also fail to address *Turrieta II's* concern that allowing other PAGA plaintiffs to intervene and vacate settlement judgments would "curtail[] PAGA litigation by making it more difficult." (*Turrieta II, supra*, at p. 699.) Multiple proxies and multiple lawyers, our Supreme Court anticipated, would attempt to represent the same real party in interest—the state. This would raise questions about which plaintiff would control and direct the litigation and settlement process, whether all plaintiffs would have equal authority, whether one could unilaterally settle claims on the state's behalf without the agreement of or in the face of opposition from other plaintiffs, and whether all plaintiffs could recover attorney fees and costs under PAGA's attorney fees provision. (*Ibid*.) Indeed, "counsel for the plaintiffs in overlapping PAGA actions, concerned about their fee recovery, may attempt to use intervention to derail settlement." (*Id*. at p. 703.)

The Supreme Court's concerns have been realized in this case. Both appellants argued that the *Gutierrez* settlement was the product of a collusive reverse auction, and Estrada argued that the settlement "offers insufficient consideration" to the aggrieved employees and the state. In addition, it is reasonable to anticipate vigorous disputes over attorney fees, as both appellants sought such fees in their respective actions, and Tercero asserted that the trial court "used the wrong test" when

20

it approved the fee award to counsel for the *Gutierrez* plaintiffs. Appellants do not dispute that vacating the judgment and permitting their participation would add layers of complexity to this litigation. It could require collateral discovery and evidentiary proceedings, a clawback of funds from the LWDA, and prolong the resolution of the case indefinitely.

In sum, appellants have presented us with no persuasive basis for departing from *Turrieta II*. Estrada lacks standing to appeal from the order denying his motion to intervene. (*Turrieta I, supra,* at p. 977; Code Civ. Proc., § 902.) Tercero lacks standing to pursue an appeal from the order denying his motion to vacate the judgment. (*Id.* at p. 972.) Dismissal of their appeals is appropriate as neither plaintiff meets the requirements of Code of Civil Procedure, section 902. (See *Moniz, supra,* 109 Cal.App.5th at p. 336 [dismissing nonparty PAGA plaintiff's appeals from judgment and order denying motion to vacate the judgment]; *In re Marriage of Tushinsky* (1988) 203 Cal.App.3d 136, 143 [where appellants were not "'part[ies] aggrieved'" by a judgment as required by Code Civ. Proc., § 902, they had "no right, or standing, to appeal from the judgment," and the reviewing court "ha[d] no jurisdiction to consider their appeal" and "must" dismiss it].)

Even if appellants had standing to appeal, they fail to persuade us that the trial court erred. It is inappropriate to consider the errors in the judgment asserted by Estrada because he did not move to vacate it under Code of Civil Procedure, section 663. Having failed to do so, he did not become a "party of record and obtain the right to appeal from the judgment." (*Turrieta II, supra*, at p. 710.)

Tercero forfeited three of his four contentions of errors in the judgment by failing to raise them properly in the trial court. (*Lee v. West Kern Water Dist.* (2016) 5 Cal.App.5th 606, 635.) His remaining argument—that the trial court ignored "[a]mple [e]vidence of [c]ollusion" in the negotiation of the settlement—is unsupported by citations to any such evidence in the record. The argument, too, is forfeited. (See *Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970 [statements in a brief concerning matters in the appellate record must be supported by a citation to the record, and reviewing court has discretion to disregard contentions unsupported by proper page cites to the record].)

## DISPOSITION

The appeals are dismissed. Respondents are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MORI, J.

We concur:

COLLINS, Acting P. J.

TAMZARIAN, J.